## PITZNER VS. SHINNICK.

| 39 | 129 |
|----|-----|
| 74 | 434 |

| 39 | 129 |
|----|-----|
| 76 | 501 |

| 39 | 129 |
|----|-----|
| 92 | 179 |

NEGLIGENCE: RAILROAD CROSSINGS. *(1) Recovery not allowed for injury of which plaintiff's negligence was a proximate cause. (2) The rule applied to killing of cattle where defendant has left open gate at railroad farm-crossing. (3) Questions of negligence for the jury, unless proof conclusive.*

| 39 | 129 |
|-----|------|
| 114 | ²609 |

1. The general rule is, that a party cannot recover for an injury of which his own negligence was' in whole or in part the proximate cause. Whether *McCall v. Chamberlain*, 13 Wis., 637, creates an exception to this rule, and whether the doctrine of that case would be followed by this court in a similar case, are questions not here determined.

2. Under sec. 32, ch. 119, Laws of 1872, which declares that any person who shall open bars or gates on a railroad farm crossing, and not immediately close the same, shall be liable to the party injured for all damages resulting from such act, one whose cattle have escaped upon a railroad through such open bars or gate, and have there been killed by a train, cannot recover from the person by whose fault such bars or gate were left open, if he had negligently suffered the cattle to escape from his own premises to the farm of another, on which such railroad crossing is situate.

3. Questions of negligence are for the jury, unless the proof is conclusive; and upon the evidence in this case it was error to nonsuit the plaintiff on the ground that he was guilty of contributory negligence.

APPEAL from the Circuit Court for *Jefferson* County.

Action to recover the value of cows belonging to the plaintiff, which escaped from his farm and were killed on the track of a railroad adjacent thereto. The facts upon which it is claimed that the defendant is liable, as they are stated in the pleadings and appear from the evidence, are as follows:

Plaintiff is the lessee and occupant of a farm in Jefferson county; and defendant is the owner and occupant of an adjoining farm on the west. The railroad track of the Chicago & Northwestern Railway Company extends across the defendant's farm near its east line. Between the track and the west line of plaintiff's farm, defendant has a narrow wood lot; and adjoining thereto on the east the plaintiff has a pasture lot. Between such pasture and wood lots there is a defective line fence, which does not appear ever to have been divided, or the portion thereof to be maintained by the owner or occupant of 'each farm, ascertained. The railroad track is fenced across defendant's farm, and through the town. On such farm there is what is termed a farm crossing, with gates in the railroad fence, one of which opens into such wood lot, and the other is opposite thereto in the fence on the west side of the track.

During the afternoon of Wednesday, October 7, 1874, and when the plaintiff was temporarily absent from his farm, several of his cows escaped from his pasture, went on the railroad track, and during the following night were run against and killed by a passing train. On his return home towards evening, plaintiff discovered that his cows were missing, and searched for them until dark, but without success. He did not find them until after they were killed. The testimony tends to show that the cows passed from plaintiff's pasture over such defective line fence into defendant's wood lot, and through the open gate to the track, where they were killed. It also tends to show that defendant permitted the gate at the farm crossing to remain open at and before the time the cows were killed; and that plaintiff did not use ordinary care to prevent the escape of the cows from his own premises. Further reference to the testimony will be found in the following opinion.

It is claimed that the defendant is liable to pay for the cows by virtue of the provisions of sec. 32, ch. 119, Laws of 1872, which is the same as sec. 3, ch. 268, Laws of 1860 (Tay.

Stats., 1044, § 36). The preceding sections provide for fencing railroads and for constructing cattle guards, farm crossings, gates and bars, etc. The section above cited is as follows: " When such fences, cattle guards or crossings shall be constructed as contemplated by this act, any person who shall willfully take down, open or remove the same, or any portion thereof, or allow the same to be taken down, opened or removed, shall, upon conviction, be subject to a fine of not less than ten dollars nor more than fifty dollars, and shall, in addition thereto, be liable to the party injured for all damages resulting from the taking down, opening or removing of such fence, cattle guard or crossings. This section shall not be construed so as to prevent the taking down of bars, or the opening of gates, for the purpose of passing through the same; but any person who shall take down bars or open gates, and not immediately replace or close the same, shall be liable to all the penalties provided for in this section."

When the plaintiff had closed his testimony, the circuit judge, on defendant's motion, ordered a nonsuit; and from the judgment entered pursuant to this order the plaintiff appealed.

*Harlow Pease*, for appellant:

The liability imposed by the statute (Tay. Stats., 1044, § 36) is absolute, and, in the absence of proof of contributory negligence, plaintiff is entitled to recover, whether the cattle were rightfully or wrongfully on defendant's land, from which they passed through the gate upon the track. Sec. 15, ch. 122, Laws of 1856, required the La Crosse & Milwaukee R. R. Co. " to fence its road in a good, proper and substantial manner," without defining its liability for not doing so. Under this provision it has been held by this court that the intention of the statute was to protect, not only adjacent land-owners, but the public generally, and that the common-law rule in regard to fences was repealed. *McCall v. Chamberlain*, 13 Wis., 637. See, also, *Laude v. C. & N. W. R'y Co.*, 33 Wis., 640. Now these gates and bars at farm crossings form a part of the

fence, and are constructed and maintained as such by the rail-road company, as required by the statute. The duty of keeping them closed is created by the same statute which requires them to be built, and is equally imperative. It follows that the liability for a neglect of that duty is analogous to the liability of the company for a failure to construct and maintain them. Any other construction not only renders the statute nugatory, but imposes upon railway companies a useless and burdensome expense. 2. There was no proof of contributory negligence. The fact that plaintiff knew that the gate had been left open previous to the time when his cattle were killed, cannot be construed into a consent on his part that it should be open, neither can it operate to defeat his remedy. *Laude v. C. & N. W. R'y Co., supra; McCoy v. C. P. R. R. Co.,* 6 Am. R., 623, Am. Law Reg., May, 1875, 269–272. 3. The question of contributory negligence should at least have been submitted to the jury. *Langhoff v. M. & P. du C. R'y Co.,* 19 Wis., 489.

The cause was submitted for the respondent on the brief of *V. W. Seeley,* who argued that at common law, as well as by statute, the owner of cattle is bound to restrain them from trespassing upon his neighbor's land, and, if he neglects to do so, he is not only precluded from recovering any damages for any injury which they may sustain by reason of their trespassing, but is himself liable for the trespass. *McCall v. Chamberlain,* 13 Wis., 637; *Jackson v. R. & B. R. R. Co.,* 25 Vt., 150; *Bemis v. Connecticut R. R. Co.,* 42 id., 375; *Holladay v. Marsh,* 3 Wend., 142; *Wells v. Howell,* 19 Johns., 385. And the common-law rule has not been changed by the act of 1860. Shearm. & Redf. on Neg. (2d ed.), § 322; *Ryan v. R. R. Co.,* 9 How. Pr., 453, and cases above cited. Plaintiff, therefore, in permitting his cattle to go at large, was guilty of an act of gross negligence, which would preclude a recovery for anything but a willful injury. *C. & N. W. R'y Co. v. Goss,* 17 Wis., 428; *Galpin v. C. & N. W. R'y Co.,* 19

id., 609; *Russell v. Hanley*, 20 Iowa, 219. Having actual or constructive notice that the gate was being left open, and not having used ordinary care to prevent the cattle from passing through it, he cannot recover for damages which might have been avoided by the use of such care. Shearm. & Redf., 541, and cases there cited. And his negligence appearing from his own evidence, he was properly nonsuited. *Achtenhagen v. Watertown*, 18 Wis., 331; *Delaney v. M. & St. P. R'y Co.*, 33 id., 67.

LYON, J. It is claimed by the learned counsel for the plaintiff, that, if the defendant allowed the gate at his cross-, ing to remain open at and before the time the plaintiff's cows were killed, and the cows went on the track through such open gate, the defendant is absolutely liable for the loss of the cows, even though the plaintiff was himself guilty of negligence which contributed directly to the loss.

. There is testimony in the bill of exceptions tending to show that the defendant owned and occupied the farm on which the gate in question is located, and that such gate was left open constantly for several days immediately preceding, and down to the time the cows were killed. Also that during such time the sons of the defendant (who probably resided with him) passed through the gate and left it open behind them. With this testimony in the case, we are unable to say that there is no testimony tending to show that the defendant allowed the gate (and therefore the railroad fence of which the gate is a part) to remain open. That there is testimony tending to show that the cows went through the open gate to the railroad track, is indisputable.

We are now to consider whether the liability of the defendant for the loss of the cows is absolute, as it is claimed, or whether his liability depends upon the absence of negligence on the part of the plaintiff contributing proximately to the loss. In considering this question, it will be assumed that the

defendant allowed the gate to remain open in violation of the statute, and that, had the gate been kept closed, the cows would not have been destroyed.

To support the position that the defendant is absolutely liable, counsel for the plaintiff relies mainly upon the case of *McCall v. Chamberlain*, 13 Wis., 637. Sec. 1, ch. 268, Laws of 1860, required every railway company to fence its road, and to construct cattle guards, etc., within a prescribed time, and provided that " until such fences and cattle guards shall be duly made, the railroad company, its agent or agents, the trustees, lessee, or other parties having control and management of any such road, shall be liable for all damages which shall be done by the agents or engines, to cattle, horses or other domestic animals thereon, occasioned by failure to erect such fences or cattle guards as herein required." It was held in *McCall v. Chamberlain*, that if the railway company neglected to make such fence within the prescribed time, " it would be liable for all damages to animals straying on the track through the want of such fence, without reference to the question whether there was negligence or want of skill in managing the cars at the time of the injury, or to the question whether such animals were rightfully or wrongfully on the adjoining land from which they escaped on the track." The above extract is taken from one of the head notes to the case, and it seems to state accurately the points decided. It is not entirely certain that the court intended to hold, in that case, that the owner of the cattle could recover if he negligently permitted them to become trespassers upon the adjoining lands, with knowledge that for want of fences they were liable to go upon the railroad track and to be run over by passing trains. Whatever inferences may be drawn from the language of the opinion in that case, there is no express assertion of any such doctrine.

In the subsequent case of *Antisdel v. C. & N. W. R'y Co.*, 26 Wis., 145, the late Mr. Justice PAINE (by whom the opin-

ion was prepared in *McCall v. Chamberlain*) drew a distinction between the liability of a railway company for injuries resulting from a failure to fence the road in the first instance, and liabilities resulting from its failure to keep the fence in repair after its erection, and concedes that in the latter case the question of care and diligence is involved. See also *Ward v. The Town of Jefferson*, 24 Wis., 342.

In *Laude v. The C. & N. W. R'y Co.*, 33 Wis., 640, also cited and relied upon by counsel for the plaintiff, the colts of Laude escaped from his yard, without his fault, and went upon the track of the railroad from lands upon which they were trespassers, through an opening in the railroad fence, and were run against by a passing train and killed. The opening in the fence had existed for a long time, and was known to the agents of the railway company, who had ample time before the colts were killed in which to repair the fence. It was held that the fact that the colts went upon the track from lands upon which they were trespassers, did not defeat the action; but the doctrine is clearly recognized, that, had the colts escaped because of the fault or negligence of the owner, the action could not have been maintained.

The statute which makes towns liable for injuries caused by defective highways therein, is just as positive and unconditional in its terms as the statute under which it is sought to hold the defendant liable in this action. Its language is: "If any damage shall happen to any person, his team, carriage or other property, by reason of the insufficiency or want of repairs of any bridge, or sluiceway, or road, in any town in this state, the person sustaining such damages shall have a right to sue for and recover the same against such town, in any court having jurisdiction thereof." R. S., ch. 19, sec. 120 (Tay. Stats., 513, § 156). Yet in numerous cases brought under this statute, this court has held that if the negligence of the plaintiff contributed proximately to the injury, there could be no recovery. The following are some of the later cases

in which this doctrine is asserted or recognized: *Cremer v. Town of Portland*, 36 Wis., 92; *Montgomery v. Town of Scott*, 34 id., 338; *Perkins v. Fond du Lac*, id., 435; *Hawes v. Town of Fox Lake*, 33 id., 438; *Burns v. Town of Elba*, 32 id., 605; *Wheeler v. Town of Westport*, 30 id., 392; *Houfe v. Town of Fulton*, 29 id., 296.

Again, it was enacted in sec. 41, ch. 79, R. S., that no railroad train should go faster than at the rate of six miles per hour in a city until it had passed all the traveled streets therein; and sec. 25 of the same chapter provided that in case of the destruction of life by a violation of that chapter, for every life destroyed the offending party should be liable to the representatives of the deceased in a sum not exceeding $50,000 nor less than $10,000. The case of *Langhoff, Adm'r, etc., v. The Milwaukee & Prairie du Chien R'y Co.*, 19 Wis., 489, and *S. C.*, 23 id., 43, was brought under the above provisions. The evidence tended to show that the death complained of was caused by the violation of the statute by the railway company; but it appeared (as the court held when the case was last here) that the negligence of the deceased contributed thereto. Notwithstanding the positive, unconditional terms of the statute imposing the liability, it was held that, because of such contributory negligence of the deceased, there could be no recovery.

The general rule undoubtedly is, that a party cannot recover for an injury of which his own negligence was, in whole or in part, the proximate cause. *Cunningham v. Lyness*, 22 Wis., 245, and cases there cited. If *McCall v. Chamberlain* is an exception to this rule, the case seems to stand alone in our reports. And the cases are so numerous in which the rule has been applied, that we do not feel at liberty to make other exceptions to it. We neither affirm nor disaffirm the doctrine of that case. When another like it shall be presented, the court will determine the scope and extent of that decision, and whether it shall be followed or overruled.

We hold that if the plaintiff negligently suffered his cattle to escape from his own premises to the farm of the defendant, he cannot recover in this action, even though in all other respects he may be entitled to judgment.

But it does not necessarily follow that the nonsuit was properly ordered. Unless the testimony showed conclusively that the negligence of the plaintiff contributed directly to the destruction of his cows, the question of negligence was one for the jury, and the court was not justified in taking the case into its own hands and nonsuiting the plaintiff. *Jalie v. Cardinal*, 35 Wis., 118. See also Vilas and Bryant's note to *Achtenhagen v. Watertown*, 18 id., 347. Does the testimony show conclusively that the plaintiff was guilty of such contributory negligence? It certainly tends to show such negligence on his part; and had the jury found him guilty of it, the verdict could not be disturbed on the ground of want of testimony to support it. Yet it appears, or at least there is testimony tending to show, that the plaintiff made some effort to keep his cows on his own premises. He yarded them nights, and made immediate search and inquiry for them on his return home after they escaped from his pasture. Besides, there is some confusion in the testimony concerning the plaintiff's knowledge that his cattle were accustomed to go upon the defendant's land, and that the gate at the crossing was habitually left open. These facts seem to render the case a very proper one for the consideration of a jury. Upon the whole case we think the proof of plaintiff's alleged contributory negligence is not so clear and conclusive as to justify the court in ordering a nonsuit. For this reason there must be a new trial.

*By the Court.* — The judgment of the circuit court is reversed, and a *venire de novo* awarded.