HENRY HOPKINS, *as Warden, &c.*, v. KANSAS PACIFIC RAILWAY COMPANY.

NEGLIGENCE, OF RAILROAD COMPANY; *Stock-Killing Act of 1874.* The purpose and scope of the law of 1874, requiring all railroad companies whose roads are unfenced to pay for injuries done to stock by their engines and cars, was to obviate the necessity of inquiring into the *mere negligence* of the owners of the stock, or of the parties in charge of the trains. Where cattle get upon the track at a place where the road can and ought to be fenced, and, without any wanton or willful act of the owners or persons in charge, are there injured by a passing train, the law applies, and the company is responsible for the injury.

*Error from Leavenworth District Court.*

ACTION by *Henry Hopkins* as warden of the Kansas State Penitentiary, to recover from the *Railway Company* the value of two mules. The facts are stated in the opinion, *infra*. The district court, at December Term 1875, gave judgment for defendant. New trial refused, and plaintiff brings the case here.

*J. H. Gillpatrick*, and *J. W. Taylor*, for plaintiff.

*J. P. Usher*, and *Chas. Monroe*, for defendant.

The opinion of the court was delivered by

BREWER, J.: This was an action brought by the plaintiff to recover the value of two mules, killed on the railroad track of defendant, by one of its trains. The testimony, which is preserved in the record, is, so far as any question of negligence on either side is concerned, as follows:

*Hopkins, plaintiff, testified:* "The mules in question, the property of the State of Kansas, and in plaintiff's possession as warden, together with several others, a small herd, were sent by him, on the 7th of June 1874, along a private or neighborhood road from the penitentiary, to be driven on said private road across the railroad of defendant, near by, to graze on the timber-bottom beyond. He sent them by and they were under charge of two convicts from the penitentiary, whom witness then regarded and still thinks were at

the time thoroughly competent and trustworthy men for the purpose, and whom he was in the habit of placing in charge of said mules, and had ever faithfully discharged their duties as such herdsmen."

*Charles Franke, witness for plaintiff,* testified, that, "He was driving in a buggy, with his brother, from their farm in the vicinity, along said neighborhood road, and had approached near the said railroad of defendant, where the said mules were killed; that he saw the mules in charge of the two convicts who were driving them, and that the mules seemed to be coming up from drinking at the creek, which makes a bend just there, leaving a narrow strip between it and the railroad track, and that they were coming out from this bend as the train came around the curve in the railroad near by; that he heard no whistle, or ringing of the locomotive bell, till just before the engine struck the animals; that there was no grass in the bend of the creek where the mules were when first seen by witness, and some of them in crossing the track were struck by the locomotive. There was no other place where they could have approached the water in the creek."

*Henry Franke, for the plaintiff,* testified substantially the same as the last witness.

*John Robinson, called as a witness by plaintiff,* testified, that, "He was a fireman on the engine and train which ran over the mules mentioned; that the train was an excursion train, chartered by the German Turners' Society of Leavenworth, and was *en route* from Leavenworth to Lawrence, on Sunday morning, at a point near the Kansas State Penitentiary, at about eight o'clock, or about one hour and-a-half or two hours before the usual time for the passing of the morning train on the road at that point. We were ordered to leave an hour or more before the regular leaving-time from the Leavenworth depot, and were running at about the rate of twelve to fifteen miles per hour, which was within the time ordered by schedule. Could not say whether the whistle was blown before passing the curve, which is from one to two hundred yards from where the mules were killed, but the whistle was blown when the engineer saw the animals on the track ahead, after and as the train rounded the curve. The train was not supplied with the Westinghouse air-brake, and could have been stopped considerably sooner with, than without, that appliance, but could not have been stopped before it reached the place where the mules were."

The value of the mules killed was conceded to be three

hundred dollars, and it was admitted that the defendant had the right, but had not, at the point named, fenced its track. Upon this testimony the court found as matters of fact, among other things that—"3d, the running over and killing of said mules was not the result of any negligence of the defendant; but, 4th, was the result of substantial negligence of the plaintiff contributing thereto;" and as a conclusion of law, that plaintiff was not entitled to recover.

It seems to us that the judgment of the court below must be reversed. We fail to see any evidence of negligence on the part of the plaintiff in the matter. Certainly, it was not negligence to send the mules out to graze, although to reach the place of grazing they must be driven across the railroad track, providing they were, as in this case, driven across at a place where it is conceded they might rightfully be driven. They were sent in charge of trusty and competent men. Nor is there in the meager statement of what took place at the time of the injury, anything showing negligence on the part of the men in charge. The same may perhaps be said with equal truth of the conduct of those in charge of the train. But it is unnecessary to enter into this question of negligence, for we conceive that the purpose and scope of the stock-killing law of 1874, in force at the time of this injury, was to obviate the necessity of such inquiry. It imposes liability for stock killed and wounded by running trains, "irrespective of the fact as to whether such killing or wounding was caused by the negligence of such railway company or corporation, or the assignee, or lessee thereof, or not." (Laws 1874, p. 143, § 1.) That applies to such a case as this, where stock is killed by a passing train. We do not mean to decide that where the injury results from the willful or wanton act of the owner, that he can recover; nor that this law applies where the stock is killed at a public crossing, or depot-grounds, at which there can be no fence, or where the stock get upon the track at such a place, and then stray along the track to the place of injury, or where stock which is being carried in the cars is injured. But where the road is unfenced at a place

where it can and ought to be fenced, and stock there gets upon the track through no wanton or willful act of the owners, or persons in charge, and are injured by passing trains, then the law applies, and obviates the necessity of all inquiry into the mere negligence of the parties concerned, whether owners, persons in charge of the stock, or managers of the railroad trains.

The judgment will be reversed, and the case remanded for a new trial.

All the Justices concurring.