CENTRAL BRANCH RAILROAD CO. v. EMMA LEA.

1. RAILROAD STOCK LAW OF 1874; *Night Herd-Law; Duty and Liability of Owner of Stock.* L., the owner of a cow, in a township and county in which by the orders of the board of county commissioners, duly made and published, the night herd-law of 1868, and the general herd-law of 1872, were in force, permitted said cow to run at large in the night-time, and while so running at large the cow strayed upon the track of a railroad, and was run over and killed by a passing train, without any negligence on the part of those in charge of the train. The railroad track at the place where the cow got onto the track and was killed, was unfenced, though it ought to have been fenced under chapter 94 of the laws of 1874. *Held*, That L. was equally at fault with the railroad company, and acting equally in disregard of statute, and could not therefore recover of it any damages for the killing of the cow.

2. —————— The case of *Hopkins v. K. P. Railway Co.*, 18 Kas. 464, commented on, and the opinion therein limited.

*Error from Marshall District Court.*

IN August 1875, *Emma Lea* commenced an action against the *Railroad Company*, before a justice of the peace of Marshall county, to recover damages for the killing of a cow by a moving train. A trial was had, which resulted in a judgment in favor of the plaintiff for $50 damages, $10 attorney-fee, and costs of suit. A petition in error was filed in the district court of Marshall county to obtain a reversal of this judgment on several grounds set forth in said petition. The district court reversed the judgment of the justice, but further ordered that the case be set for trial, as in cases of appeal, and that the plaintiff be allowed to file an amended petition. The answer to the amended petition contained, 1st, a general denial, except as to the incorporation of the defendant company; 2d, alleged that at the time of the accident complained of, the night herd-law, prohibiting cows and certain other domestic animals from running at large in the night-time, was in force in the township where the plaintiff resided, and where the accident occurred, and that said cow was running at large in the night-time with the knowledge and by the permission of the plaintiff, in violation of said night herd-law, and that said accident happened by reason thereof. A 3d defense alleged, that at the time of said accident the general herd-law prohibiting cows and certain other domestic animals from running at large was in force in Marshall county, and concluded in nearly the same words as the second defense. Trial at December Term 1876. The principal findings are copied in the subjoined opinion. Judgment for plaintiff, and the *Railroad Company* brings the case here on error.

*D. Martin,* for plaintiff in error, contended that the facts stated in the 5th finding completely exonerate the railroad company from the charge of negligence made in the amended petition, so that if there is any cause of action against the railroad company it is solely by virtue of the provisions of

the statute of 1874. It may be admitted that the facts stated in the 1st, 2d, 3d, 5th, 9th and 10th findings, taken alone, would make a *prima facie* case against the railroad company under that statute; but the facts stated in the 4th, 6th, 8th and 11th findings constitute a perfect defense thereto, and the facts stated in the 7th, 8th and 12th findings constitute another perfect defense thereto. The railroad stock-law of 1874 is not inconsistent with, and does not repeal or modify either the night herd-law of 1867, (Gen. Stat. 1001,) nor the general herd-law of 1872; but all of said acts should be construed together as a series of enactments *in pari materia*, each being a general law; the latter, however, partaking of the nature of local-option laws, but governing alike all persons and corporations, and regulating alike all property within the specified locality, when put in force by order of the proper authorities. It results from the foregoing that said railroad stock-law of 1874 has no application in herd-law localities. Under the general fence-law, the usual purpose of a fence is to keep cattle *out*. But where the herd-law is in force the rule is changed. The owner of cattle is liable for the damages done by them to the crops of his neighbor "without regard to fences." (General herd-law of 1872; night herd-law, Gen. Stat. 1002, § 3.) Under the herd-law, therefore, the usual purpose of a fence is to keep cattle *in*. Railroad companies have no cattle to keep *fenced in*, and in herd-law counties the law presumes that the cattle prohibited from running at large need not be *fenced out*. So there is no requirement for a fence against such cattle. *Perkins v. Eastern and B. & M. Rld. Cos.*, 29 Me. 307. Counsel also cited *Wells v. Beal*, 9 Kan. 161, 165; 12 Kas. 608; 5 Kas. 191, 433, 445, 446; *P. Ft. W. & C. Rld. Co. v. Methven*, 21 Ohio St. 586; *Pitsner v. Shinnick*, 39 Wis. 129; *P. P. & J. Rld. Co. v. Champ*, 75 Ill. 577; *Jackson v. R. & B. Rld. Co.*, 25 Vt. 150; *Keech v. B. & W. Rld. Co.*, 17 Md. 32; *Giles v. Balto. & Md. Rld. Co.*, 55 N. H. 552; *McDonnell v. P. & N. A. Rld. Co.*, 115 Mass. 564; 5 Kas. 167, 178; *Munger v. Tonawanda Rld. Co.*, 4 N. Y. 349, 359; *Covey v. C. & N. W. Rld. Co.*, 43 Wis. 17.

*A. E. Park,* for defendant in error, maintained, that, the legislature, for the purpose of protecting citizens in their respective rights, and to keep them from being oppressed by railroad corporations, passed the railroad stock-law of 1874, compelling railroad companies to fence their roads, and as a penalty for not fencing roads, that they shall pay to the owners of any stock killed by them in operating their roads the full value of said stock, *regardless of negligence by such railway companies or corporations;* that the safety of persons and property both demands that the railroad companies in this state should fence their roads. It was nothing more than a reasonable police regulation to require the railroad companies to fence their roads; and to compel obedience, it is proper to impose an adequate penalty in case they do not. Now the adequate penalty under said law of 1874 in case a railroad company has not fenced its road, is, to pay to the owner the full value of all stock killed by said company; and it is true, as stated in 16 Kas., page 578, that it is almost the unvarying rule in this class of legislation to follow the command with but one expressed penalty, and that is, payment of damages for stock killed. See ch. 64, Laws of 1874; *K. P. Rly. Co. v. Mower,* 16 Kas. 573; 16 Kas. 583; 17 Kas. 566; *Thayer v. S. L. A. Rld. Co.,* 22 Ind. 26; *Knight v. T. W. Rld. Co.,* 24 Ind. 222; *I. C. Rld. Co. v. Guasel,* 24 Ind. 22; *I. C. Rld. Co. v. McKinney,* 24 Ind. 383; *M. & I. Rld. Co. v. Whiteneck,* 8 Ind. 217; *I. Rld. Co. v. Krecheoll,* 16 Ind. 84; *I. Rld. Co. v. Marshall,* 27 Ind. 300; *I. Rld. Co. v. Townsend,* 10 Ind. 38; *N. A. Rld. Co. v. Tillon,* 12 Ind. 3.

The opinion of the court was delivered by

BREWER, J.: This was an action under the railroad stock-law of 1874, to recover for the killing of a cow. The following special findings present the principal questions in the case:

3d.–The railroad of the defendant was not at said time inclosed with a good and lawful fence, nor any fence, to pre-

vent cows and other animals from being on its said railroad, neither generally nor at the point of the accident hereinafter mentioned.

4th.—On 4th June 1875, and for a long time prior thereto, the plaintiff resided in Blue Rapids City township, in Marshall county, and she permitted said cow to run at large upon the highways and uninclosed lands in said township, and said cow was so running at large upon the uninclosed lands of the Lewis heirs, in said township, in the night-time, with the knowledge and permission of the plaintiff at the time of the accident hereinafter mentioned.

5th.—On the night of said 4th June, and about 9 o'clock P.M., the regular passenger train of the defendant, going westward through said Blue Rapids City township, and through the uninclosed lands of the Lewis heirs, ran upon and over said cow, and so wounded her as to cause her death in a few hours. Said cow was not so injured and killed through any negligence of defendant in the management of said train — the cow having got upon the track only a few feet in front of the locomotive of said passing train, so that it was impossible to stop or check said train in time to avoid a collision with said cow; and said railroad company was not guilty of any negligence contributing to the injury, except from the failure to fence its railroad as aforesaid.

6th.—On the 29th of April 1871, by due and regular petition signed by more than three-fifths of the number of electors of the said Blue Rapids City township, the board of commissioners of said county of Marshall, being duly in session, made and passed, and entered upon their records, an order in compliance with the request of said petitioners, and in pursuance of sections 1, 2 and 3 of chapter 105 of the General Statutes of 1868, requiring the owners of cows and other domestic animals therein named in said Blue Rapids City township to keep them confined in the night-time, between the 1st day of March and the 1st day of December of each year; and that the owner or owners of such domestic animals so required to be confined in the night-time should be liable to any person who should suffer damage from the depredations of such animals in the night-time, during the period that such animals were by said order required to be confined, without regard to the condition of his or her fence, and that said order should take effect from and after the 27th of May 1871, and should be published in the "Marysville Locomotive" for three consecutive weeks prior to said day; and said

order was duly certified by the county clerk, under his hand and official seal, and was duly published in said "Marysville Locomotive," a weekly newspaper printed and published in said county of Marshall, and of general circulation therein, for three consecutive weeks, between said April 29th and May 27th 1871, and said order went into full force and effect said May 27th, and has ever since remained in full force and effect.

7th.—On the 11th of April 1873, the board of commissioners of said county of Marshall, being duly convened in regular session, made and passed and entered of record an order as follows:

"ORDERED, In accordance with the laws of the state of Kansas, entitled 'An act to provide for the running at large of animals,' approved February 24th 1872, that on and after the 12th day of May 1873, all horses, mules, asses, neat cattle, (except calves under six months of age,) also, goats, sheep, and swine, are prohibited from running at large within the bounds of Marshall county; and that this order shall be published in the 'Marshall County News' for four successive weeks prior to said 12th of May 1873."

Said order, duly certified by the county clerk, was duly published in said "Marshall County News," a weekly newspaper published and printed in said county of Marshall, and of general circulation therein, for four successive weeks between said April 11th and May 12th, to-wit, on April 12th, April 19th, April 26th, May 3d, and May 10th, 1873, and said publication was duly proved and verified by the affidavit of the publisher of said newspaper on the 12th of said May, and said affidavit, together with a copy of said printed notice as published in said newspaper, was on said day duly entered on the records of the said commissioners, and said order went into full force and effect on the 12th of May 1873, and has ever since remained in full force and effect.

8th.—The plaintiff knew that said cow was running at large upon the uninclosed lands in the vicinity and neighborhood of said railroad, and that 9 o'clock P.M. was the usual time for the regular passenger train to pass westward to Waterville.

(The 9th finding was as to a demand for payment.)

10th.—Said cow would not have been killed or injured at said time and place if the defendant had fenced its railroad.

11th.—Said cow would not have been killed or injured at said time and place if the plaintiff had kept said cow confined in the night-time between March 1st and December 1st.

12th.—Said cow would not have been killed or injured at said time and place if the plaintiff had not permitted her to run at large.

Upon these findings the district court held the railroad company liable, and it brings the case here on error. The question is an important one, for the general herd-law is in force in many counties through which run railroads; and are railroad corporations the only parties in such counties under obligation to fence out stock? It is apparent that each party, plaintiff and defendant, was in neglect of duty, and that if either had obeyed the law, no loss would have occurred. Are they equally culpable? If so, neither can recover of the other—for the law seldom helps one wrongdoer to recover damages from another. The night herd-law, (Gen. Stat. p. 1002, § 3,) provides that those who violate it "shall be liable to any person who shall suffer damage from the depre-. dations" of their animals, "without regard to the condition of his or her fence." The general herd-law, laws of 1872, p. 384, § 3, also provides that "any person injured in property by the running at large of any of the animals specified in the said order of the board of county commissioners, shall have a lien, without regard to fences, upon the animals so running at large for the full amount of all damages committed by them upon the property of said person;" while sections 1 and 5 of the law of 1874, (Laws 1874, pp. 143, 144,) reads:

"SEC. 1. Every railway company or corporation in this state, and every assignee or lessee of such company, or corporation, shall be liable to pay the owner the full value of each and every animal killed, and all damages to each and every animal wounded by the engine or cars on such railway, or in any other manner whatever, in operating such railway, irrespective of the fact as to whether such killing or wounding was caused by the negligence of such railway or corporation, or the assignee or lessee thereof, or not."

"SEC. 5. This act shall not apply to any railway or corporation, or the assignee or lessee thereof, whose road is inclosed with a good and lawful fence to prevent such animals from being on such road."

Neither law imposes any other penalty than the liability for damages, and each law is equally plain and positive in imposing that liability. In neither of the last two statutes

is any express repeal of the prior laws. Unless necessarily inconsistent, each therefore remains in force, for repeals by implication are not favored. (*The State, ex rel. Tholen, v. Farrell,* ante, 214, 217.) There is no such inconsistency. Each may remain in full force. The railroad company whose road is unfenced is liable, even in the herd-law counties, to parties whose stock is killed by its trains; and the owners of cattle running at large are liable to any persons, including therein railroad companies, for any damages caused by such cattle. This mutual liability will sometimes, though not always, be for the same amount. . If no damage be done to the track, or train, then the company is liable to the cattle-owner for the value of the cattle, and the cattle-owner is liable to the company for the damage done to it, (that is, for the liability imposed upon it for the cattle;) and the one equals the other. It may be however that the train is thrown from the track, and more or less injured; and then the liability of the cattle-owner would by the terms of the statute be largely in excess of the liability of the company. Probably however, the fact that the company was in fault for lack of a fence would prevent its recovery of such greater damage, on the principle of contributory negligence. In this case there is no claim of other damage than the loss of the cow, so that giving force to the liabilities imposed by the respective statutes, the claims of each party against the other would be exactly the same.

Again, it will be noticed that the findings show no other negligence on the part of either party than is involved in the disregard of the statutory duty. The parties in charge of the train were guilty of no actual negligence; neither was the owner of the cow. Except for the statutes, neither would have a claim upon the other. And this neglect of the statutory duty was not the proximate but only a remote cause of the injury. The running of the train against the cow, was the proximate cause; and in this there was no negligence. So that neither party can say to the other, that its negligence was the direct and immediate cause of the injury. It comes back therefore to the propositions, that each party was in

fault, and each party had disregarded the requirements of the law; that such disregard by each contributed equally to the injury as a remote cause; and that in the proximate causes no fault is imputable to either. Why then should one violator of the law recover damages of another for injuries of which his own violation is as much the cause as that of the defendant? The obligation of the one statute is no more binding than that of the others, and it is the duty of courts to see that no man profits by his own wrong. Whether therefore we look at it as the mere setting-off of one cause of action against another, or an attempt of one wrongdoer to make another pay for an injury caused equally by the wrong of each, it is clear that the plaintiff must fail. The courts will leave the parties where it finds them. *Potior est conditio defendentis.* It is doubtless true, as decided in *Hopkins v. K. P. Rly. Co.*, 18 Kas. 464, that the intention of the law of 1874 was to obviate the necessity of any inquiry into the mere negligence of the parties concerned in the transaction which caused the injury, at least of the parties on the railroad side; but it was not its intention to relax the binding force of other enactments, or to enable any one to disregard their prohibitions or commands with impunity. Authorities are not wanting, for similar questions have been passed upon by other courts. Thus, in *P. Ft. W. & C. Rld. Co. v. Methven*, 21 Ohio St. 586, the Ohio statute of 25th March 1859, (S. & C. 331,) required all railroad companies to fence their roads on both sides within two years, and also to make and maintain suitable crossings for the accommodation of the public and of persons living near the line of such railroad, together with the necessary cattle-guards to prevent cattle and other animals from endangering themselves and the lives of passengers by getting upon such railroads, and enacted that such railroad companies should be liable for all damages which should result to such animals by reason of the want or insufficiency of such fences, road crossings, or cattle-guards, etc. But the statute of 13th April 1865, (S. & S. 7, 8,) made it unlawful for any owner of cattle to suffer the same to run

24—20 KAS.

at large, under a forfeiture of not less than one nor more than five dollars, and rendered such owner liable for all damages done by such cattle upon the premises of another, "without reference to the fence which may inclose said premises." Methven brought his action against the railroad company to recover the value of a cow killed on the railroad track, which was unfenced. The railroad company answered, that "Plaintiff did not live along the line of its said road, nor was his cow grazing in any inclosed field adjacent thereto — that said plaintiff knowingly, willfully, and unlawfully permitted his said cow to run at large on the highways and uninclosed lands adjacent to defendant's said railroad, whereby said cow went upon said road, and was accidentally killed; and that by reason thereof plaintiff cannot maintain his said action against the defendant." A demurrer to this answer was sustained by the district court, but the supreme court reversed the decision, and held that the answer was a sufficient defense to the action.

Again, in *Pitzner v. Shinnick*, 39 Wis. 129, the plaintiff and the defendant occupied adjoining farms. A railroad ran through the defendant's land, and the company had fenced its track as required by the statute. There was a farm-crossing, with gates in the railroad fences on each side. The statute provided, that any person opening any such gates at such crossings, and not immediately closing the same, should be liable to a fine, and liable also to pay the damages sustained by any person by reason of such failure or neglect. It appeared that the defendant had opened the gate in the railroad fence, and negligently suffered it to remain open for a long time. The division fence between the two farms was defective, and there was evidence tending to show that the plaintiff did not use ordinary care to prevent the escape of his cows from his own premises. They escaped through the defective division fence, and went upon the defendant's premises, and thence through the open gate to and upon the railroad track, where they were struck and killed by a passing train. The action to recover damages from the defendant was

based upon the statute. The court (page 133) says: "It is claimed by the learned counsel for the plaintiff, that if the defendant allowed the gate at his crossing to remain open at and before the time the plaintiff's cows were killed, and the cows went on the track through such open gate, the defendant is absolutely liable for the loss of the cows, even though the plaintiff was himself guilty of negligence which contributed directly to the loss." After a review of the Wisconsin authorities, the court (page 137) says: "We hold that if the. plaintiff negligently suffered his cattle to escape from his own premises to the farm of the defendant, he cannot recover in this action, even though in all other respects he may be entitled to judgment."

In *P. P. & J. Rld Co. v. Champ*, 75 Ill. 577, it was held, that the owner of a horse who voluntarily permits the same to run at large contrary to the law in force in the county, cannot recover of a railway company for the killing of the same by one of its trains upon the ground that such company has failed to fence its track as required by the statute of Illinois. The same doctrine is asserted in *Perkins v. Eastern and B. & M. Rld. Companies*, 29 Maine, 307, 310, where, referring to the railroad companies, the court says: "But if required to fence the entire track, the defendants would not be responsible for killing the plaintiff's cow, if she were wrongfully upon the adjoining close."

And again, in *Jackson v. R. & B. Rld. Co.*, 25 Vt., 150, it is held that the owner of animals, suffered to go astray, and *trespassing* upon a railroad, cannot recover for their destruction by a train, without negligence on the part of the servants of the company, even where the company is under a special statutory obligation to fence its road, and has omitted to do so. The opinion of the court, which was delivered by the late learned and distinguished jurist, the honorable Isaac F. Redfield, then (1853) chief judge of the supreme court of Vermont, contains an able and interesting discussion of the subject of fences and trespassing animals. And it may be remarked here, that the reasoning in the case seems entirely

applicable to those localities in this state in which the herd-law is in force.

In *Keech v. B. & W. Rld. Co.*, 17 Md. 32, it is held that the well-settled principle of the common law, that a plaintiff is not entitled to recover for injuries to which his own fault or negligence has directly contributed, is not abrogated by the several acts of assembly regulating the liability of railroad companies for stock killed or injured by their trains; but that those acts leave the question of negligence *on the part of the plaintiff* where it was at the common law, and do not confer upon a party who is himself a wrongdoer the right to obtain redress for the consequences of his own negligence. or misconduct. The Maryland act of 1838, ch. 244, then in force, declared that railroad companies should "be responsible for injuries inflicted upon any stock, as cattle, horses, etc., or by fire occasioned by their engines upon any of their roads or the branches thereof, unless said company can prove that the injury complained of has been committed without any negligence on the part of said company or their agents." The court says, that "to adopt the construction contended for by the appellant, would entitle a party to recover damages for stock killed by a railroad train, although it should be shown that the accident resulted from the grossest carelessness on his part, or that he voluntarily turned them loose upon the railroad track when a train was passing."

In *Giles v. Boston & Maine Rld.*, 55 N. H. 552, it is held that a railroad corporation is not liable for damages done to cattle unlawfully in a pasture adjoining, and escaping thence upon its road through defective fences which the railroad is bound to keep in repair. And in *McDonnell v. P. & N. A. Rld.*, 115 Mass. 564, it is decided, that a railroad corporation is not liable for killing animals which, being unlawfully upon upon a lot of land, go thence upon its track, and are killed by a passing train, although it was the duty of the corporation to maintain a fence between its track and said lot, and it did not do so, unless the killing was wanton or malicious.

And again, it is said by the court in *Munger v. Tonawanda*

*Rld. Co.*, 4 N.Y. 349, 359, that "The plaintiff, before he can stand in court as an accuser, must himself be free from fault. He cannot support his action by basing it partly on his own wrong, and partly on the wrong of his adversary. He is answered, when it appears that *he* has been wanting in duty, or has contributed to his own injury. He has then volunteered to suffer, and the law sees no wrong in the case. So that, whenever it appears that the plaintiff's negligence or wrongful act had a material effect in producing the injury, or substantially contributed toward it, he is not entitled to recover." See also, *Covey v. C. & N. W. Rld. Co.*, 43 Wis. 17; Alb. Law Journal, 430; *D. & M. Rld. Co. v. Miami Co. Infirmary*, Sup. Ct. Com. Ohio, 6 Cent. Law J. 436.

It will be observed that in some of these cases, notably that in 21 Ohio St., the act of the plaintiff was itself a violation of some statute, and in that respect parallels the case at bar; while in others, the act or conduct of the plaintiff was simply contributory negligence, and the courts held that the obligations and liabilities cast by statute upon railroad companies in no manner changed the rule as to the effect of contributory negligence. If these authorities correctly enunciate the law, as modified by our statutes, the opinion we expressed in the case of *Hopkins v. K. P. Rly. Co.*, 18 Kas. 464, goes too far; for there we said the effect of our statutes was to avoid the necessity of any inquiry into the mere negligence of the stockowner, or those in charge of the stock, as well as that of the railroad company. So far as it respects this question, any expression in that case was unnecessary, for the evidence showed no negligence on the part of the owner or those in charge, and the decision was correct as based upon the effect of the statute upon the matter of the company's conduct. Further examination and reflection have led us to doubt whether we did not go too far in that case, and we therefore are disposed to modify that opinion by striking out all reference to the effect of the statutes upon the acts and conduct of the claimant. We do not mean by this to decide that the doctrine of "contributory negligence" applies as heretofore,

but leave the matter open for further inquiry in some case in which we shall have the benefit of a full discussion thereof by counsel. Upon that question we have the statute of 1870, reference to which was made in the case of *St. Jos. & D. C. Rld. Co. v. Grover*, 11 Kas. 302, which broadly declares, that "the railroads in this state shall be liable for all damages done to person or property when done in consequence of any neglect on the part of the railroad companies," and the statutes of 1874, the essential portions of which we have quoted, *supra*. Upon these, two important questions arise: first, has the legislature the power, as between two parties equally guilty of negligence, to compel one to pay to the other all the damages resulting equally from their several wrongs or omissions? and second, did the legislature intend by these statutes to touch anything other than the acts or conduct of the railroad companies? Before a final decision of these questions, which seem to us of doubt as well as importance, we desire such assistance as will be furnished by a full examination on the part of careful and learned counsel.

For the reasons however heretofore given — that is, because each was knowingly acting in disobedience to the commands of a statute — we hold that the plaintiff cannot recover in this case; and the judgment must be reversed and case remanded, with instructions to enter judgment upon the findings in favor of the defendant below, plaintiff in error.

All the Justices concurring.