HERRELL, Respondent, vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*May 13—June 19, 1902.*

*Railroads: Killing of horse on track: Contributory negligence: Court and jury: Animals trespassing on highway.*

1. In an action against a railway company for the killing of a horse, the evidence, though circumstantial, is *held* sufficient to support a finding of the jury that the horse went upon defendant's right of way over a defective cattle guard, and while there was struck by a passing train.

2. A pasture gate on a highway, a mile and a quarter from a railway crossing, was opened to drive cows to the closely adjoining barnyard, and was allowed to remain open about half an hour while the cows were being milked. When the gate was opened plaintiff's horses were in the pasture, seventy rods away. They were quiet, and with no known tendency to escape. Their barn was in the opposite direction from the railway, and it does not appear that there was anything likely to attract them toward the track. *Held* that, although plaintiff knew that one of the cattle guards at the crossing was defective, the question whether he was guilty of contributory negligence in leaving the gate open was one for the jury.

3. The fact that animals are astray or trespassing upon the highway whence they go upon a railway right of way over a defective cattle guard, does not exempt the railway company from its liability for injury to such animals, imposed by sec. 1810, Stats. 1898.

APPEAL from a judgment of the circuit court for Lafayette county: GEORGE CLEMENTSON, Circuit Judge. *Affirmed.*

Action for loss of a horse by negligence of defendant. The evidence tended to prove the following state of facts:

Plaintiff lived on a farm about a mile and a quarter west of a highway crossing known as "Fox Crossing," on the defendant's right of way. On the 6th of November, 1900, at about 4 o'clock in the afternoon, his brother opened the gates of a pasture near the house, and drove certain cows up to the barnyard to be milked, and returned them after milking,—an interval of about half an hour,—leaving the gate open meanwhile. When the cows were let out, three horses or colts were grazing at the further side of the same pasture. They had been pastured all summer, and were quiet horses, never breaking out. The next morning one of the three horses was found killed on the south side of the highway crossing aforesaid, about eight feet east of the track, apparently by collision with a train. Tracks of all three horses were observed from the gate of plaintiff's pasture above mentioned to this crossing. On the north side of the crossing the cattle guard was defective, and had been for a long time, to the knowledge of the plaintiff, and, as the jury found, to the knowledge of the defendant. The tracks of a single horse were found crossing the cattle guard, and making their way several hundred feet northward, within the railroad right of way, and then returning along the center of the track. They indicated that the horse was running, and terminated so near the cattle guard that another jump would have reached it. Horse hair appeared upon the cattle guard and along the crossing. Splinters, claimed to be fragments of the pilot of an engine, were found near the cattle guard, both north and south of it. About an hour and a half after the time of opening the pasture gate a special cattle train of defendant passed over the crossing, southward. The night was foggy, so that the headlight illuminated only about a car's length of the

track ahead of the engine. As the engine reached the crossing, two horses suddenly rushed across it from west to east. Neither of the engine force testifies that one of these horses was struck, though one said that he thought so, and the pilot was found broken upon examination. They deny presence of any horse on the track north of the crossing.

The complaint seeks recovery from the defendant by reason of the defective condition of the cattle guard, charging no negligence in the operation of the train. After a motion for nonsuit and to direct a verdict, a special verdict was taken, in which it was found that the horse which was killed had gone into the right of way over the defective cattle guard and that the train came along and struck him while he was in there; that he was not on the highway crossing when struck; that the cattle guard was defective, and had been so for a long time, and that defendant's employees had knowledge of its condition; and that plaintiff's brother was guilty of no want of ordinary care in leaving the pasture gate open while milking the cows, knowing the horses to be loose in there. A question whether such negligence on the part of plaintiff's brother contributed was not answered. After the verdict the defendant moved, first, to change the answer to the question as to contributory negligence from "No" to "Yes," and to answer the question as to whether it contributed in the affirmative, and to render judgment thereon. This being overruled, defendant moved to set aside the verdict and grant a new trial, which was also overruled, and judgment entered for the plaintiff for damages and costs, from which the defendant appeals.

For the appellant there were briefs by *Orton & Osborn,* and oral argument by *P. A. Orton.*

For the respondent there was a brief by *Wilson & Martin,* and oral argument by *R. J. Wilson.*

DODGE, J. Appellant's first position involves the contention that there was no evidence justifying the inference of the

jury that the horse which was killed was, at the time of being run down, within the right of way of the defendant, so that the event could be ascribed to the defective condition of the cattle guard. After a careful perusal of the evidence, we are unable to concur in this view. The rule has been many times declared in this court that if there is any credible evidence, which, if believed by the jury, might support their conclusions, it is not for this court, upon appeal, to set them aside. In this case the evidence is circumstantial, but there is evidence which, if believed, tends to prove that a horse did cross into the right of way over the defective cattle guard; that he came onto the track some 1,200 feet north, and thence ran toward the crossing; that horse hairs were found upon the cattle guard; and that the plaintiff's horse was killed. These facts might justify the inference that the horse so killed, having strayed up the right of way and sought to escape the fast-running train, was run down just before he reached the cattle guard, although there was evidence from other witnesses which, if believed, made that fact impossible.

Appellant further insists that the evidence conclusively establishes contributory negligence in the plaintiff. The facts as to the conduct of the plaintiff's brother, acting for him, are substantially undisputed. The only one upon which negligence can be predicated is the leaving open of a pasture gate a mile and a quarter from the railway during a half hour, while the cows were being milked at the closely adjoining barnyard. While it has been held that it is contributory negligence, in law, to allow horses or cattle to run at large adjoining an unfenced or defectively fenced railroad track, no case justifies, or at any rate requires, an inference of negligence from so slight an act as this. We cannot say that the jury might not, as reasonable men, having knowledge of the custom amongst farmers, decide that such an act as the evidence discloses here was within the care customarily exercised by ordinarily careful persons under like circumstances.

The horses were some seventy rods away from the gate, quiet and gentle, with no known tendency to escape from the pasture. Their barns were in the opposite direction from the railroad, and no evidence discloses anything likely to attract them in the direction of the latter. We must hold that the inference as to negligence from such conduct was within the province of the jury, and that we cannot set aside their decision thereon.

Appellant's third assignment of error, as argued in its brief, is based upon the contention that the horses, being astray upon the highway, were, in legal effect, trespassers thereon, and that defendant owed to them no active duty of care. This contention rests upon the well-known rule that one maintaining a dangerous place by the common law owes a duty of care to prevent injury thereby only to those lawfully or by his invitation subjected to the peril. It, however, overlooks the consideration that the duty and the liability of railroads with reference to fences and cattle guards are not merely such as the common law imposes, but are regulated and increased by statute. Sec. 1810, Stats. 1898. The duty to exercise care in maintaining such structures is absolute, and is due to all persons. Liability for breach of that duty is also absolute, except for contributory negligence on the part of the person suffering injury. Hence the fact that animals are trespassers on the land whence they come in contact with a defective railroad fence or cattle guard in no wise exempts the company from the liability imposed by the statute, which contains no such exception. *McCall v. Chamberlain,* 13 Wis. 637; *Dunnigan v. C. & N. W. R. Co.* 18 Wis. 28; *Pitzner v. Shinnick,* 39 Wis. 129; *Curry v. C. & N. W. R. Co.* 43 Wis. 665, 684.

We find none of the errors which are argued by appellant well assigned.

*By the Court.*—Judgment affirmed.