McCALL vs. CHAMBERLAIN.

January Term, 1861.

McCALL
v.
CHAMBERLAIN.

| | | | |
|---|---|---|---|
| 13 | 637 | | |
| 91 | 367 | | |
| 91 | 493 | | |
| 13 | 637 | | |
| 97 | 646 | | |
| 13 | 637 | | |
| 110 | ²359 | | |
| 13 | 637 | | |
| 114 | ²609 | | |

Section 15, chap. 122, General Laws of 1856, required the LaCrosse & Milwaukee Railroad Company to fence its road in parcels, each to be fenced within one year after it was put in operation. *Held*, that the object of this statute was not merely to regulate the division fences, as between the company and the adjoining landholders, but was to protect the public generally.

*Held* further, that if the company neglected to make such fence, beyond the year limited, it would be liable for all damages to animals straying on the track through the want of such fence, without reference to the question whether there was negligence or want of skill in managing the cars at the time of the injury, or to the question whether such animals were rightfully or wrongfully on the adjoining land from which they escaped on to the track.

The lessee of the road, operating it for his own benefit, takes it subject to all duties imposed upon the company for the benefit of the public, and incurs the same liability for damages occasioned by the want of fences, that the company would.

ERROR to the Circuit Court for *Milwaukee* County.

*Alva Stewart*, for plaintiff in error:

1. The defendant, as lessee of the road, acquired no greater rights or immunities than the company possessed. 10 Cush. (Mass.), 562. 2. The company was required by the statute to fence for the protection of the public, and it makes no difference in its liability for the damages resulting from a willful violation of the statute, whether horses killed were rightfully or wrongfully on the adjoining land. 3 Kern., 42; 71 E. C. L., 609; 8 Barb. (S. C.), 358; id., 390; 25 Vt. (2 Dean), 116; 25 Ala., 229; 5 Ind., 111; 39 Me. (4 Heath), 273; 10 Rich. Law, 227; 6 Ind., 441.

*Emmons, Van Dyke & Hamilton*, for defendants in error, contended that the statute relied upon by the plaintiff did not render the defendant liable for injuries happening to animals on the track, whose owner was not proprietor of adjacent lands, in the absence of proof of negligence on the part of the defendant, and regardless of whether the plaintiff's negligence contributed to the occurrence (*Stucke vs. Mil. & Miss. R. R. Co.*, 9 Wis., 202); that the cases in England, New York, Indiana, Maine, Vermont and South Carolina are inapplicable here; that in New York the statute expressly provided that the railroads should be liable in such cases; that in Indiana the statute, in terms, withdrew from

January Term, 1861.

McCall
v.
Chamberlain.

the consideration of the justice the negligence of the plaintiff as a defense; that in South Carolina land holders are not required to *fence in* (as by the common law), but to *fence out* that the English statute required the company to keep the gates across the railway closed, so as " to prevent cattle or horses passing along the road from entering upon the railway," which was construed to apply to strays as well as to animals driven; and that the case in 25 Vt. was an action by the owner of the land adjoining the track. Counsel cited as applicable to this case, 24 Vt., 487; 20 Ill., 221; id., 478; 21 id., 186.

May 15.

*By the Court*, PAINE, J. This action was brought to recover of the defendant, as lessee of the La Crosse and Milwaukee Railroad, damages for the alleged killing, by the cars, of three mares and a colt belonging to the plaintiff. After the plaintiff's evidence was closed, the defendant moved for a nonsuit, which was granted.

The evidence upon the fact of the horses having been killed by the cars was circumstantial, but it was clearly sufficient to have been submitted to the jury. Still if the plaintiff's right of action depended upon showing negligence or unskillfulness in the management of the train at the time of the killing, perhaps there was not sufficient evidence upon that point to warrant the court in submitting the question to the jury. But even assuming that there was no negligence or want of skill in managing the cars at that time, we are still of the opinion that the nonsuit was improperly granted. The law made it the duty of the company to fence every part of the road within one year after it should commence operating such part. It was admitted that the part where the horses were killed, if killed at all, had been in operation more than a year, and was not fenced. That being so, we think the company would have been liable for any animals killed on that part of the track, without reference to the question whether there was negligence in managing the cars at the time of the killing, or to the question whether such animals were rightfully or wrongfully on the adjoining land from which they had passed upon the track. That they

would be liable to the owner of the adjoining land for in-
juries to his animals escaping on the track from a defect of
fences which the company was bound to make, there can be
no question. *Hurd vs. R. R. Co.*, 25 Vt., 116 ; *Norris vs. R. R. Co.*, 39 Me., 273. And the case of *Corwin vs. R. R. Co.*, 3 Kern., 42, goes to the full extent of holding the company liable, not only to the owner of the adjoining lands, but to the owner of cattle which were trespassers on such adjoining lands. The counsel for the defendant contended that this decision was based upon the positive provision of the statute in New York, which, after requiring the companies to fence their roads, enacted that until such fences were erected, they should be liable for all damages done to animals on the track. Our statute does not contain this provision, and hence it is said that decision was inapplicable. But we do not think the decision in New York was placed upon the provision as to the liability of the companies. It is true the court mentions the positive provisions of the statute, as was very natural where the statute contained those provisions. But we think the result would have been the same, if it had simply imposed the duty to fence, and said nothing about its liability for not doing it. For we understand it to be a general principle that where the law imposes upon any person a specific duty for the protection or benefit of others, if he neglects to perform that duty he is liable to those for whose benefit it was imposed, for any damages sustained by reason of such neglect. It is upon this principle that those cases proceed, which have held the company liable to the owner of adjoining lands whose animals escaped therefrom on to the track, for want of fences which the company was bound to make. In most of that class of cases there was no positive provision that the company should be liable, but the liability was left to result from an application of the general principle before stated. And there being no room for doubt that the company was bound to fence for the protection of adjoining land owners, whenever their cattle had been injured for want of such fence, the companies have been held liable, whether the stat-

utes contained an express provision that they should be so or not.

McCALL
v.
CHAMBERLAIN.

The only question upon which it would seem there could be any room for doubt, is whether the statute requiring the company to fence, was intended merely to regulate the division fences between the company and the adjoining land owners, for the convenience of the latter only, leaving the liability of the company, with respect to all others, as it would have been at the common law, or whether it was designed for the protection of the public generally, whose animals were liable to get upon the track. This question is suggested in the case in 3 Kernan, and the court come to the conclusion that the latter was the object of the statute. That conclusion seems to us more especially true in this state, many parts of which are thinly settled, and where it is almost the invariable custom for the settlers to allow their animals to run at large, fencing only their plowed lands. The rule of the common law requiring every one to fence in his own animals, under pain of their being considered trespassers if they entered even on the unenclosed lands of another, if strictly enforced, is often productive of hardships in a new country like ours. For this reason it has never been adopted in some of the states. *Murray vs. R. R. Co.*, 10 Rich. Law, 227; *R. R. Co. vs. Peacock*, 25 Ala., 229. It has been held to be the law in this state, though it is generally disregarded by common consent in the newly settled parts of the state. And this fact, which was undoubtedly well known to the legislature, as well as the frequent hardships resulting from the strict enforcement of the common law rule, leads our minds to the conclusion that it was the intention of the statute, in requiring the railroad company to fence its road, to repeal the common law rule, and to protect not only the adjoining land owners, but the public generally. This conclusion being arrived at, the liability of the company for damages to animals not belonging to the owner of adjoining lands, is as clear as its liability to the owner of such lands. The protection of both being equally within the scope and object of the statute, they are equally entitled to an action for damages occasioned by a neglect of the duty

imposed. And it is as unnecessary in the one case as in the January Term, 1861. other, for the statute to say expressly that the liability should exist. Having imposed the duty, the liability for damages occasioned by neglect of that duty, is implied though not expressed. The case of *Fawcett vs. R. R. Co.*, 71 E. C. L., 609, fully sustains our conclusion, and is a complete answer to the objection that the plaintiff's horses were trespassers on the lands adjoining the railroad. We think the opinions in that case entirely applicable to the questions presented here.

And we have no doubt that a lessee in possession of the road incurs the same liability as the company. He takes the road, if at all, subject to the duty imposed on the company for the benefit and protection of the public. *Linfield vs. R. R. Co.*, 10 Cush., 562. There would be no safety in any other rule.

The judgment is reversed, with costs, and a new trial ordered.