DENNIS KELIHER *vs.* CONNECTICUT RIVER RAILROAD COMPANY.

A railroad corporation omitted to fence the line of its road in front of a culvert under the road bed; and did not construct any barrier to prevent cattle from entering the culvert, although it was practicable to maintain such a barrier without interfering with the flow of the water.   The depth of water was usually enough to prevent the escape of cattle from the land of the adjoining proprietor, at the unprotected place; but on a day when the water was low, a cow which he was pasturing there passed through the culvert, and over land of another person on the other side of it, and then entered the road at a place which was also defective for want of a suitable fence, and was there injured by a passing train.   *Held,* that the railroad corporation was liable for the injury.

TORT for injuries resulting to the plaintiff's cow through the alleged neglect of the defendants to erect and maintain suitable fences along the line of their railroad.   The case was submitted to the judgment of the court upon the following statement of facts :

" The defendants are a railroad corporation, duly created, who located and constructed their road in Greenfield in 1848.   The plaintiff is owner of a lot of land, used by him at the time of the injury, as hereafter mentioned, as a pasture adjoining the railroad in Greenfield.   In June 1870, the plaintiff's cow, being pastured on said lot of land, escaped therefrom in the way hereinafter mentioned, came upon the defendants' road, and was struck and injured by an engine of a passing train.   No claim is made that the defendants were negligent in management of the train.   The

cow escaped through an arched brick culvert, six feet high and six feet wide, under the defendants' road, opening from the plaintiff's pasture. Passing through this culvert, she came upon the bed of a former mill pond, as hereafter mentioned, and straying thence a short distance on land not owned by the plaintiff came upon the defendants' track through an opening where the defendants were bound to maintain a suitable fence. A small stream ran through the culvert. The size of the culvert was not larger than was reasonably necessary to convey the running water at its highest flood; but in low water a part of the bed was bare, so much so that the cow was tracked through the culvert. It was practicable to maintain sufficient barriers at or near the mouth of the culvert to prevent the escape of cattle, without interfering with the flow of the water. About ten rods west of the culvert, a mill owner formerly maintained a dam, which set the water back through the culvert and formed a small pond on the plaintiff's land. No fence had ever been erected between the plaintiff's land and the pond. While the dam was maintained, the depth of water in the culvert, and in the pond on the plaintiff's land, was sufficient to prevent any escape of cattle from the plaintiff's pasture. But in the winter of 1869 the mill was burned, and the water thereafter allowed to run off; and the water did not thereafter set back through the culvert. The right of flowage of the plaintiff's land had been taken by said mill owner under the mill act, and damages awarded by the county commissioners. On the plaintiff's side of the track, about fifteen rods north of the culvert, the defendants had drawn in their fence at right angles, thirteen feet, and thence to the mouth of the culvert had set their fence posts on the embankment of the road. South of the culvert, said fence continued from the mouth of the culvert, along said embankment of the road, some twenty rods, and was there brought out to the line of the defendant's land, at a place owned by another person. This fence was so constructed that cattle could not pass directly upon the railroad track. Before the dam had been erected or the water set back, the fence had been erected and maintained in a straight line upon the defendants land, and was so when the plaintiff purchased said land. Had

the defendants reërected their fence straight upon their line, it would have passed six feet and two inches east of the mouth of the culvert."

If upon these facts the plaintiff could maintain his action, judgment was to be given for him for a certain sum ; otherwise he was to become nonsuit.

*G. W. Bartlett,* for the plaintiff.

*S. O. Lamb & A. De Wolf,* for the defendants.

AMES, J. Under the provisions of Gen. Sts. *c.* 63, §§ 42, 43, it was the duty of the defendants to make and maintain fences suitable for the benefit and security of the landowner and of travellers upon the road, upon both sides of the railroad for its entire length, (with certain exceptions not necessary to be here considered,) and also to " construct and maintain sufficient barriers at such places as may be necessary, and, where it is practicable to do so, to prevent the entrance of cattle upon the road." The duty is imperative, and is expressed in very comprehensive terms. As soon as the mill pond was drawn down, there ceased to be any fence between the lands occupied by the parties respectively, capable of confining the plaintiff's cow within the limits of his inclosure. It was no fault of the plaintiff's, therefore, that the cow escaped from the pasture and wandered upon the railroad and was there killed. It is true that in order to get into a dangerous place the cow had to pass first under the road bed ; and, after wandering over land belonging to another person, made her way to the railroad track by passing through an opening in another fence, which the defendants were also bound to maintain.

In this state of facts, there seems to be no reason for excusing the defendants from liability. The statute is not intended to be confined to cases in which cattle pass directly from the pasture to the railroad. It is enough if the escape of the cow was owing to the insufficiency of a fence which the railroad company was bound to maintain, and it is no excuse to the defendants that after she had escaped from that cause she passed over land of another proprietor, and so found her way upon the track, by a similar deficiency at another place, where they were also under the same obligation. The case differs widely from *Eames* v. *Salem & Lowell*

*Railroad Co.* 98 Mass. 560, in which the escape of the cattle was owing to the neglect of the plaintiff to maintain his own fence. The escape in that case happened without any fault on the part of the railroad company, and the cattle were unlawfully out of bounds before they reached the point of danger. As between the parties to the present case, however, the escape was owing to the defendants' neglect of duty, and it is not for them to say that the cow was unlawfully allowed to go at large. It would be trifling with the statute to hold that, although the plaintiff has been guilty of no fault, he is to be left without remedy. The case comes within the rule laid down in *Eames* v. *Boston & Worcester Railroad Co.* 14 Allen, 151.

*Judgment for the plaintiff.*