### THE CLEVELAND, COLUMBUS, CINCINNATI, AND INDIANAPOLIS RAILWAY COMPANY *v*. CROSSLEY, Executor.

RAILROAD.—*Injury to Animals.*—*Fence.*—In an action to recover the value of a horse killed by the cars of a railroad company, the court instructed the jury that the company would be liable, if the horse was killed at a point on the road not securely fenced, and where it could have been fenced without interfering with the rights of the public.

*Held*, that the instruction was not erroneous.

SAME.—*Release.*—*Partition Fences.*—The release of a right of way through his lands by the plaintiff in such an action, and the building of fences along the line of the railroad through the lands by the railroad company, and the use of the fields adjoining for pasturage by the plaintiff, relying on the fences for protection to his cattle, will not make the fences partition fences, which the plaintiff would be bound to keep up.

SAME.—A land-owner released to a railroad company the right of way through his land, and further released and relinquished to the company "all damages

The Cleveland, Columbus, Cincinnati, and Ind'polis R. W. Co. *v*. Crossley, Ex'r.

and rights of damages, actions and causes of action, which I might sustain or be entitled to by reason of anything connected with, or consequent upon, the location or construction of said work, or the repairing thereof when finally established or completed."

*Held*, that said release in no manner related to actions for damages for the injury or destruction of cattle by the running of cars along the railroad.

APPEAL from the Madison Circuit Court.

DOWNEY, J.—The appellee sued the appellant, in the circuit court, to recover the value of a horse, the property of his testator, alleged to have been killed by the locomotive and cars of the appellant on its railroad, at a point where the road passes through the farm of the testator, and where it was not fenced. No question as to the pleadings is made. There was a jury trial, verdict, and judgment for the plaintiff, a new trial having been refused. The only error assigned is the ruling of the court in refusing a new trial.

The reasons stated, in the written motion for a new trial, were, first, that the verdict was contrary to law; second, that it was not sustained by sufficient evidence; third, the giving of instructions first and second, in the general charge; and fourth, the refusal to give instructions number one, two, three, and four, asked by the defendant.

We have carefully read the evidence, which is all set out in the record, and have no doubt of its sufficiency to sustain the verdict.

We proceed to examine the instructions given and those refused. Those given were as follows : " The first question presented for your consideration in this case is, did the defendant, with their cars, kill the horse mentioned in the complaint, at a place where their road was not securely fenced, and where they could have fenced it without interfering with the rights of the public? If so, your finding should be for the plaintiff, otherwise for the defendant."

Second. " If your finding should be for the plaintiff, the next inquiry should be, what was the horse worth at the time of the killing? You should determine this question from the preponderance of the evidence."

The objection to the first of these charges given, in the

372　　SUPREME COURT OF INDIANA.

The Cleveland, Columbus, Cincinnati, and Ind'polis R. W. Co. *v.* Crossley, Ex'r.

language of the brief of appellant's counsel, is as follows: "The answer of the defendant, in the case at bar, sets up the negligence of Crossley in failing to maintain the fence as was his duty, and in knowingly and intentionally turning his animals on his pasture fields without any protection, and the evidence fully sustained it in every particular, and a new trial should therefore have been granted. But we insist further that these questions of negligence are questions of fact to be decided by the jury, but the court, by the first charge given, took from the jury every such consideration, and told them, as a matter of law, that if the defendants, with their cars, killed the horse mentioned in the complaint, at a place where their road was not securely fenced, and where they could have fenced without interfering with the rights of the public, they must find for the plaintiff. We think that this withdrawal from the jury of the entire defense was wholly unwarrantable and produced a wrong result on the trial."

The second paragraph of the answer alleges, in substance, that the railroad ran through the lands of the deceased; that the fences along the road on each side were partition fences; that the deceased refused to assist in keeping them up, and recklessly, carelessly, and wilfully pastured and kept his said horse, which was a breachy stallion, upon his land immediately adjoining the insufficient partition fences aforesaid, which it was his duty to repair as aforesaid, and by and through the negligence and wilful misconduct aforesaid caused his said horse to be upon defendant's said railroad track, and while on the same he was killed, without the fault of the defendant.

Issue was taken upon this, first, by a square contradiction, in general terms; and second, by the assertion that so much thereof as charges said deceased with recklessly, carelessly, and wilfully pasturing and keeping his horse upon said lands, adjoining to said supposed insufficient partition fences, was recklessly, carelessly, and wilfully untrue, and that the fence was not a partition fence, but was one made exclusively for the use and benefit of the company, was burned down, and

by said company recklessly, carelessly, and wilfully allowed to remain down, etc.

There was no evidence that the fence was, or ever had been a partition fence, but on the contrary, the evidence showed that it was built by the company. The company cannot say that it was negligence on the part· of the deceased to allow his animals to pasture in his fields adjoining the railroad. It was the duty of the company, if she would put the plaintiff to proof of negligence, to "fence in" the road. There was no evidence of negligence to be left to the jury, and the court committed no error in not putting the question of negligence to them. See *The Jeffersonville, Madison, and Indianapolis Railroad Company* v. *Nichols,* 30 Ind. 321 ; *The Jeffersonville, etc., R. R. Co.* v. *Dunlap,* 29 Ind. 426; *The Bellefontaine Railway Co.* v. *Reed,* 33 Ind. 476.

No objection is urged to the second charge given, and we cannot see any. If the jury found for the plaintiff, we see no reason why he was not entitled to recover the value of the horse.

In the first of the charges refused, the court was requested to tell the jury, that if the deceased had released the right of way, and if the railroad company built the fences along its road, and the deceased used and relied on them to keep his cattle off of the railroad, and to separate his lands therefrom, it was a partition fence and he and the defendant equally bound to maintain the fence.

We think the facts enumerated would not make the fence a partition fence which deceased would be bound to help keep up. In the second charge the court was requested to say, that if the fence was a partition fence, as indicated, and the deceased knew of its bad condition, and pastured his horse on his lands adjoining the same, and while so pasturing he came upon defendant's railroad through the defective fence and was killed, the plaintiff cannot recover.

This charge was rightly refused, because the fence was not shown to have been a partition fence. The evidence was the

other way. In 1848, the deceased executed to the company a release of the right of way over his said lands, and in it he said, "and I hereby further release and relinquish to the president and directors of the Indianapolis and Bellefontaine Railroad Company all damages and rights of damages, actions and causes of action whatsoever, which I might sustain or be entitled to by reason of anything connected with, or consequent upon the location or construction of said work, or the repairing thereof, when finally established and completed." This instrument was in evidence, and in the third charge asked by the defendant, the court was requested to say to the jury, "if Crossley, deceased, released, in the year 1848, the right of way to the defendant, and all damages resulting therefrom, he is estopped from claiming damages for maintaining fences or animals killed by the trains of the company, and cannot recover in this action."

The release in question, as we have seen, was only a release of the right of way, and of all damages resulting from the location, construction or repair of the road. It had no relation to such causes of action as that for which this suit is brought. To hold that the deceased, or his personal representative would be estopped to bring and maintain the present action, would require the application of some rule of law of which we have no knowledge, and to which we have not been referred.

The fourth charge asked was this: "The release of right of way given in evidence, if executed by the decedent, is a release of all damages resulting from a failure to maintain fences along the line of the defendant's right of way."

It would be according to this document an unusual efficacy, as a release, to hold that it was a good discharge of a cause of action which originated twenty-one years after its execution. Its language has no relation to such a cause of action. For any damages resulting from the location, construction, or repair of the road, it is probable that no action could be brought. But it is no bar in this case.

The judgment is affirmed, with ten per cent. damages and costs.

*J. A. Harrison,* for appellant.

*H. Craven,* for appellee.