THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD
COMPANY v. JAMES D. RIGGS.

1. RAILROAD COMPANY; *Liability for Stock Killed.* In Kansas, under the railroad stock law of 1874, (Laws of 1874, ch. 94,) railroad companies are required to inclose their roads with a good and lawful fence, to prevent animals from going upon their roads; and in counties where the "herd law" of 1872 is in force, (Laws of 1872, ch. 193,) cattle are not allowed to run at large. In a county where both of these laws were in force, an owner of cattle kept and pastured them on his own land, through which a railroad was constructed and operated, which railroad was not inclosed by any fence separating it from the owner's land; and the cattle strayed upon the railroad, where one of them was killed by the railroad company in the operation of its road. *Held,* That the owner of the cattle may recover from the railroad company for such injury.

2. FIRES, *When Railroad Company not Liable for.* Where the plaintiff sues a railroad company for negligently permitting fire to escape from one of its engines, whereby forty tons of hay belonging to the plaintiff were destroyed; and the jury find a general verdict in favor of the plaintiff and against the railroad company, but also find that the engine from which the fire escaped was "of the most approved invention and construction, so far as the appliances for preventing the escape of fire were concerned;" and also find that the engine was "in good condition, so far as all the appliances for preventing the escape of fire were concerned;" and also find that the engineer who managed the engine from which the fire escaped was "a competent, skillful and careful engineer;" and there was no evidence introduced tending to show that the engineer mismanaged the engine, or that he was negligent in any respect with regard to its management; and the jury do not find that there was any mismanagement or negligence on the part of the engineer; but in answer to the following question put to the jury, to wit, "How did he so mismanage his engine as to set out the fire?" the jury answered, "We cannot tell;" and in answer to the further question put to the jury, to wit, "In what does the negligence of the railroad company in permitting the fire to escape from its engine or train consist?" the jury answer, "We cannot tell;" and the court renders judgment upon these special findings in favor of the defendant and against the plaintiff: *Held,* That the judgment will not be reversed by the supreme court. A railroad company is not liable for purely accidental fires caused by its engines.

*Error from Marion District Court.*

THE facts appear in the opinion. At the May Term, 1883, the court rendered a judgment for plaintiff *Riggs* on the first

cause of action stated in his petition, and a judgment for the defendant *Railroad Company* on the second cause of action set forth therein. The defendant is here complaining of the former judgment, and the plaintiff, in his cross-petition in error, complains of the latter judgment.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error.

*L. F. Keller,* for defendant in error. •

The opinion of the court was delivered by

VALENTINE, J.: The Atchison, Topeka & Santa Fé railroad company has filed a petition in error in this court to reverse a judgment of the district court of Marion county, rendered against the railroad company and in favor of James D. Riggs, and Riggs has filed a cross-petition in error to reverse a judgment rendered by the same court in the same case in favor of the railroad company and against Riggs. Riggs was the plaintiff in the court below, and in his petition below set forth two causes of action: *First,* A cause of action for causing the death of his cow by the railroad company's failing to fence its road, as required by chapter 94 of the Laws of 1874, whereby the cow strayed upon the railroad track, where she was killed through the negligence of the railroad company in operating its road; and *second,* a cause of action for negligently permitting fire to escape from one of the company's engines, whereby forty tons of hay belonging to the plaintiff were destroyed. The defense was, *first,* a general denial; *second,* that the cow was killed at a time when she was running at large, in violation of the county "herd law" of 1872, which was then in force in Marion county, where the cow was killed; and *third,* that the cow was killed on the railroad track where it crosses a public highway. A trial was had before the court and a jury, and the jury rendered a general verdict in favor of the plaintiff and against the defendant on both causes of action, and also made certain special findings of fact; and upon this verdict and these special

findings of fact, the court below rendered judgment in favor of the plaintiff on the first cause of action, and in favor of the defendant on the second cause of action; and the defendant, as plaintiff in error, now complains of the judgment rendered on the first cause of action, and the plaintiff below, defendant in error, complains of the judgment rendered on the second cause of action.

As to the first cause of action, it appears from the evidence that during all the time while the various transactions were occurring out of which the plaintiff's cause of action is supposed to have arisen, the defendant's railroad was located upon and passed through the plaintiff's land, a portion of which road was fenced, and a portion was not fenced, though all of it could have been fenced; the plaintiff's cattle were kept and pastured on his own land, from which they strayed, through a place where the railroad was not fenced, upon the company's premises, where, immediately afterward, the plaintiff's cow was killed by a passing train. It was also admitted that the county "herd law" of 1872, (Laws of 1872, ch. 193,) as well as the railroad stock law of 1874, (Laws of 1874, ch. 94,) was in force in Marion county, Kansas, where the cow was killed. These are not all the facts of the case, but these we think are all that are necessary to be stated for the purposes of the question which we now propose to discuss. Under these facts, is the railroad company liable? That the railroad company was bound to fence its road, and for its failure to do so is liable for the killing of the plaintiff's cow, there can certainly be no doubt, unless the plaintiff, by his own wrong or negligence, contributed to the injury. (See "Railroad Stock Law" of 1874, and the numerous decisions of this court made under such stock law.) But the railroad company claims that the plaintiff did commit wrong and was guilty of negligence in permitting his cattle to "run at large" in his own field adjoining the railroad, and in violation of the "herd law" of 1872, which precludes, as the company claims, all right on the part of the plaintiff to recover from the railroad company for the killing of his cow.

Now it is not claimed that the plaintiff is precluded from his right to recover merely because his cattle were technically trespassing upon the company's premises, or upon the land from which they strayed when they entered upon the company's premises; for this court has repeatedly decided that the owner of cattle, not running at large in violation of some positive statute, but rightfully running at large under the statutes, and merely straying from land in which the owner of the cattle had no interest, and upon which the cattle were technically trespassers, to and upon the unfenced premises of a railroad company, in which the owner of the cattle had no interest, and upon which the cattle were technically trespassers, may recover from the railroad company for any injuries done by the company to the plaintiff's cattle in the operation of its road. See the numerous decisions made by this court upon this subject. There are also decisions of other courts, going even beyond this: *Railway Co. v. Howard,* decided by the supreme court of Ohio, April 24, 1883, 11 Am. & Eng. Rld. Cases, 488; *Toledo &c. Rly. Co. v. Cary,* 37 Ind. 172; *Keliher v. Conn. River Rld. Co.,* 107 Mass. 411; *McCall v. Chamberlain,* 13 Wis. 637.; *Dunkirk &c. Rld. Co. v. Mead,* 90 Pa. St. 454; same case, 1 Am. & Eng. Rld. Cases, 166. Besides, in the present case the cattle were not trespassers in any sense upon the land of the plaintiff, from which they strayed upon the premises of the railroad company, and they could hardly be called trespassers upon the premises of the railroad company, for the fee of such premises was in the plaintiff, and not in the railroad company, and he had a right to use such premises under all circumstances and in any manner he chose, provided his use of the same would not interfere with the rightful and proper use of the same by the railroad company. He would have a right to drive his cattle across the railroad track, from one portion of his land to the other, or even to pasture his cattle upon the railroad track, provided he did not interfere with the rightful use of the premises by the railroad company.

The railroad company claims that the adoption of the

40—31 KAS.

"herd law" of 1872, in Marion county, where the plaintiff's cow was killed, virtually put the common law in force; and that under the common law the owner of the cattle must take care of the same, and not permit them to run at large or to trespass upon the property of others. Now conceding that this is true, and we think it is, we do not think that it will prevent the plaintiff from recovering in the present case. The plaintiff's cow was rightfully upon the plaintiff's own land, and was not trespassing upon the property of any person, and she passed directly from the plaintiff's own land upon the premises occupied by the railroad company — premises to which the plaintiff held the fee-simple title, and in which the railroad company held nothing but an easement — and she was enabled to pass upon such railroad premises wholly from the fault of the railroad company itself in not inclosing its road with a good and sufficient fence, and not from any fault of the plaintiff.

Under such circumstances, we think there is no decision in the United States holding that the plaintiff is not entitled to recover; while there are numerous decisions in several of the states, made under similar circumstances, holding that the plaintiff may recover. (*Shepard v. Buffalo &c. Rld. Co.*, 35 N. Y. 641; *Rly. Co. v. Howard*, decided by the supreme court of Ohio, April 24, 1883, 11 Am. & Eng. Rld. Cases, 488; *Mead v. Burlington &c. Rld. Co.*, 52 Vt. 278; same case, 7 Am. & Eng. Rld. Cases, 550; *Wilder v. M. C. Rld. Co.*, 65 Me. 332; *Cleveland &c. Rly. Co. v. Crossley*, 36 Ind. 370; *Toledo &c. Rld. Co. v. Cary*, 37 Ind. 172; *Cincinnati &c. Rld. Co. v. Ridge*, 54 Ind. 39; *Cincinnati &c. Rld. Co. v. Hildreth*, 77 Ind. 504; *Rodgers v. Newburyport Rld. Co.*, 83 Mass. [1 Allen] 16; *Keliher v. Conn. River Rld. Co.*, 107 Mass. 411; *Corry v. G. W. Rly. Co.*, 6 Q. B. L. R. 237; same case, 7 Q. B. L. R. 322; same case, 2 Am. & Eng. Rld. Cases, 612; *McCoy v. Cal. Rld. Co.*, 40 Cal. 532; *McCall v. Chamberlain*, 13 Wis. 637; *Dunnigan v. C. & N. W. Rly. Co.*, 18 Wis. 33; *Brown v. M. &c. Rly. Co.*, 21 Wis. 39; *Curry v. C. & N. W. Rly. Co.*, 43 Wis. 665; *Veerhusen v. C. & N. W. Rly. Co.*, 53

Wis. 689; same case, 6 Am. & Eng. Rld. Cases, 583; *Dun-
kirk &c. Rld. Co. v. Mead,* 90 Pa. St. 454; same case, 1 Am.
& Eng. Rld. Cases, 166; *Hinman v. Chicago &c. Rld. Co.,* 28
Iowa, 491; *Horn v. A. & St. L. Rld. Co.,* 35 N. H. 169;
*White v. Concord Rld. Co.,* 30 N. H. [10 Foster] 188; *Keech
v. B. & W. Rly. Co.,* 17 Md. 32.)

These cases were decided in states where the common law
is in force, except as modified by statutory or constitutional
provisions; and in several of such states the common law
with reference to fences, and stock running at large, is in
force, except as modified by the particular statutory provision
requiring railroad companies to fence their roads. Hence it
would seem that these decisions necessarily have close appli-
cation to the present case. The railroad company also cites
a long list of authorities where it was held that the plaintiff
was not entitled to recover under circumstances which the
railroad company claims are similar to the circumstances in
the present case. The principal of such authorities are the
following: *Jackson v. R. & B. Rld. Co.,* 25 Vt. 150; *Bemis v.
Conn. &c. Rld. Co.,* 42 Vt. 375; *Chapin v. Sullivan Rld.
Co.,* 39 N. H. 53; *Giles v. B. & M. Rld. Co.,* 55 N. H. 552;
*Perkins v. The Eastern &c. Rld. Co.,* 29 Me. 307; *Eames v.
S. & L. Rld. Co.,* 98 Mass. 560; *McDonnell v. P. & N. A.
Rld. Co.,* 115 Mass. 564; *Darling v. Boston & Albany Rld. Co.,*
121 Mass. 118; *Marsh v. N. Y. &c. Rld. Co.,* 14 Barb. 364;
*Nance v. Cayuga &c. Rld. Co.,* 26 N. Y. 428; *Bennett v.
Chicago &c. Rly. Co.,* 19 Wis. 159; *Walsh v. V. & T. Rld.
Co.,* 8 Nev. 110; *Pittsburg &c. Rly. Co. v. Methven,* 21 Ohio
St. 586; *Peoria &c. Rld. Co. v. Champ,* 75 Ill. 578; *Ricketts
v. E. W. &c. Rld. Co.,* 12 C. B. (Eng.) 160.

It will be seen by an inspection of the foregoing cases that
they are not applicable to the present case. The plaintiffs'
animals, in such cases, were not only trespassers upon the
property of the railroad company, but they were also tres-
passers upon the property from which they passed when they
entered upon the property of the railroad company. In such
cases the various animals mentioned were wholly and entirely

trespassers, while in the present case they were not trespassers at all, which renders those cases very materially different from the present case. In many of the cases above cited, not only those cited on the part of the plaintiff, but also those cited on the part of the defendant, the courts have held that the statutes which require railroad companies to fence their roads do so solely for the benefit of the adjoining proprietors, and not for the benefit of others; and therefore such courts hold that, when animals are rightfully on the premises of adjoining proprietors, and escape therefrom upon the premises of a railroad company because of a want or insufficiency of fences which the railroad company is required by law to build, the railroad company will be held to be liable to the owner of the animals for any injury done by the railroad company to the animals in the operation of its road, although the railroad company may not be guilty of any wrong or negligence except the wrong or negligence of failing to build and maintain a good and sufficient fence. But where the animals are not rightfully on the land of the adjoining proprietors, but are trespassing thereon, and they pass directly from such land upon the property of the railroad company because of a want or insufficiency of fences which the railroad company is required to build, and the animals become trespassers upon the premises of the railroad company also, such owner cannot recover for any injury done to the animals in the ordinary operation of the railroad; and this for the reason that the plaintiff is as much of a wrong-doer as the defendant.

There are other authorities, however, that hold that a railroad company is required to fence its road, not only for the benefit of adjoining proprietors, but also for the benefit of the traveling public; for, as they hold, if the railroad company fences its road so that animals cannot enter upon its property, it thereby makes travel and transportation much safer upon its road than the same otherwise would or could be; and therefore, in some of such cases it is held that the railroad company must pay all damages for any animal injured because of a want of a good and sufficient fence, which the rail-

road company is required to build, although the owner of
the animal may be equally as guilty of wrong-doing as the
railroad company, and although the animal may have been a
trespasser not only upon the property of the railroad com-
pany, but also upon the property from which it passed when
it entered upon the property of the railroad company. (*Toledo
&c. Rly. Co. v. Cary*, 37 Ind. 172; *McCall v. Chamberlain*,
13 Wis. 637.).

These authorities probably go a little too far.   We suppose
that the statutes of Kansas requiring railroad companies to
fence their roads were enacted for the benefit of all persons
who may possibly be benefited by them, including the adjoin-
ing proprietors and all persons who may legally allow their
stock to run at large, and also the traveling public.

Counsel for the railroad company also cite the following
decisions of this court as tending to show that in "herd-law"
counties cattle are *wrongfully* "running at large" even where
they are kept on the owner's own land, unless they are so
*confined* that they cannot pass from the owner's land upon
the right-of-way of the railroad company, and that in all
cases where the owner's cattle escape from his own land be-
cause of a want of sufficient fences, he cannot recover: *C. B.
Rld. Co. v. Lea*, 20 Kas. 353; *K. P. Rly. Co. v. Landis*, 24
id. 406; *U. P. Rly. Co. v. Dyche*, 28 id. 200; *St. L. & S. F.
Rly. Co. v. Mossman*, 30 id..336.

Now we do not think that these decisions control the
present case, whatever may have been said in any one of
the opinions therein delivered.

In the first case, the animal was running at large in the
night-time, in violation of the night herd law of 1868, as
well as in violation of the county herd law of 1872; and
the animal did not pass directly from its owner's premises
upon the premises of the railroad company, but was a tres-
passer before it passed upon the railroad company's premises,
as well as afterward.   And the language of these two herd
laws is different.   In the night herd law of 1868, the owner
of domestic animals is required to "keep them confined,"

while under the provisions of the county herd law of 1872 the animals are not allowed to "run at large."

In the second and third cases, the animals were running at large in violation of the night herd law of 1868, and not in violation of the county herd law of 1872.

In the fourth case, the question as to the force or effect of any herd law was really not decided. In the fourth case, the only question really decided was that the signatures to a petition for a county herd law presented to and acted upon favorably by the board of county commissioners will afterward be presumed to be the genuine signatures of legal voters of the county. This was really the only question presented to the court by counsel, or decided by the court; although other questions may have been in the case.

We think we may consider the question presented to us in the present case as being really a new question, and presented to us for the first time in this case; and being thus presented to us for the first time in this case, we decide the question as above indicated. Any other decision would work great hardship to the owners of land in herd-law counties. The railroad companies might with impunity refuse to fence their roads as required by law; for, whenever sued for stock killed by them, they would say to the plaintiff: "You were equally guilty of wrong-doing, and therefore you cannot recover." And they would thereby defeat the plaintiff's action. Under such circumstances, the owners of land in herd-law counties would be obliged to build all partition fences between themselves and the right-of-way occupied by railroad companies, or be deprived of the use of their lands for keeping or pasturing stock thereon. In the present case, the plaintiff was at the time of the injury pasturing his cattle on corn stalks in his own field; which, if the railroad company's theory of the law is correct, he could not have done with any degree of safety without first building a fence between that portion of his land occupied by himself and that portion thereof occupied by the railroad company as a right-of-way. If the theory of the railroad company is correct, the owner of lands in a herd-law

county would have to abandon the use of his stalk-fields, his stubble-fields, his grass-lands, his woods, and all other lands which he wished to use merely for the purposes of pasture, unless he first built at his own expense sufficient fences between the land occupied by himself and that occupied by the railroad company to prevent his stock from passing upon the right-of-way of the railroad company. This would be a great hardship to all such persons, and might result in great loss.

We think the plaintiff is entitled to recover in this action. His cattle were confined and not permitted to run at large as to all persons except the railroad company; and if the railroad company had done its duty, they would have been confined and not been permitted to run at large as to any person, not even as to the railroad company. And can the railroad company be permitted to plead its own failures, and take advantage of its own wrong, by setting up as a defense that the plaintiff's cattle were running at large in his own field, without any sufficient fence between the plaintiff's premises and the land occupied by the railroad company? If the plaintiff's cattle were running at large at all, they were doing so merely because of the fault of the railroad company in not building a fence. We do not think they were running at large within the meaning of the herd law; and as the railroad company was the only party in fault, it certainly has no right to claim that they were running at large at all. We think the plaintiff may recover.

Of course, where a railroad company incloses its road with a good and sufficient fence, and afterward some breachy animal breaks through or over such fence and enters upon the company's premises, the company will not be liable for any accidental injury done to the animal, although the animal may have passed directly from its owner's premises upon the railroad company's premises. (*Hance v. Cayuga &c. Rly. Co.*, 26 N. Y. 428; *Fisher v. Farmers' Loan & Trust Co.*, 21 Wis. 73.) And also, if the owner of an animal should negligently permit the same to enter upon the railroad company's track at or about the time when a train was passing, and the

animal should thereby be injured, the owner could not recover. And although the owner of live stock may permit the same to pasture on his own land in the vicinity of a railroad track, and although the railroad company may be in fault in not building a fence, yet the owner must use reasonable and ordinary care and diligence for the safety and protection of his stock, or he cannot recover. This leads us to the question whether the plaintiff was guilty of any culpable negligence or not, independent of the herd law. It seems from the evidence that at the time the cow was killed, the plaintiff's cattle were kept and pastured on his own land, in charge of a son of the plaintiff and a hired man, who were chopping wood about forty rods distant. When the son and hired man heard the train coming, they started to find the cattle, but before they reached the place where the cattle were then situated, the train had passed, and the cow was killed. At this time there was a very severe snow storm, and the cattle in order to find shelter had passed from the plaintiff's premises upon the railroad track; and the storm was so severe, and the window of the engineer's cab was so covered with ice and snow, that he could not see ahead of the train more than about four hundred feet, and he did not see the cattle until he was so near to them that he could not stop the train, and thereby avoid the injury. Under the evidence, we would think that neither the plaintiff nor the defendant was guilty of any culpable negligence independent of the herd law and stock law. Evidently, under the verdict and findings of the jury, the plaintiff was not guilty of any culpable contributory negligence. There was also some evidence tending to show that the plaintiff had waived the building of a fence at the place where the cattle passed from the plaintiff's premises upon the railroad track; but whether the plaintiff did waive the building of such fence or not we think was fairly submitted to the jury, and the jury found in favor of the plaintiff, and against the defendant; and we think the verdict and findings of the jury upon this question are also correct.

This we think disposes of the first cause of action, and we shall now proceed to consider the second cause of action.

The second cause of action, as before stated, was for negligently permitting fire to escape from one of the company's engines, whereby forty tons of hay belonging to the plaintiff were destroyed. Now while the jury found a general verdict in favor of the plaintiff and against the defendant, yet the jury also found that the engine from which the fire escaped was "of the most approved invention and construction, so far as the appliances for preventing the escape of fire were concerned;" and also found that the engine was "in good condition, so far as all the appliances for preventing the escape of fire were concerned;" and also found that the engineer who managed the engine from which the fire is claimed to have escaped was "a competent, skillful and careful engineer." There was no evidence introduced tending to show that the engineer mismanaged the engine, or that he was negligent in any respect with regard to its management; and the jury did not find that there was any mismanagement or negligence on the part of the engineer; but in answer to the following question put to the jury, to wit, "How did he so mismanage his engine as to set out the fire?" the jury answered, "We cannot tell." And in answer to the further question put to the jury, to wit, "In what does the negligence of the railroad company in permitting the fire to escape from its engine or train consist?" the jury answered, "We cannot tell."

Under the findings of the jury and the evidence, we must therefore consider that the engine was complete and perfect in every respect, so far as the appliances for preventing the escape of fire were concerned, and that the engineer was a competent, skillful and careful engineer, and that there was nothing in the case tending to show that he was negligent in the management of his engine; and we cannot imagine where there could be any other room for negligence on the part of the railroad company in permitting the fire to escape which is supposed to have caused the injury. And hence we think

the court below did not err in rendering judgment in favor of the railroad company and against the plaintiff on the special findings of the jury; or at least as all presumptions are in favor of the correctness of the decision of the court below, we cannot say, merely because the jury found a general verdict in favor of the plaintiff and against the defendant, that the court below erred in rendering the judgment which it did render.

As frequently decided in this court, railroad companies are are not insurers against fire, but are liable only for negligence; and if they are guilty of no negligence, then no action can be maintained against them for any accidental fire caused by the escape of fire from their engines.    In the present case, under the evidence and the special findings of the jury, it must be held that the fire which destroyed the plaintiff's hay was purely an accidental fire, and was not caused by the negligence of any person.

The judgment of the court below will be affirmed.

All the Justices concurring.