Ft. S. W. & W. Rld. Co. v. Karracker.

46 511
47 637

## THE FORT SCOTT, WICHITA & WESTERN RAILROAD COMPANY V. C. KARRACKER.

1. INSTRUCTION, *When Harmless.* An inapplicable, and therefore improper, instruction to the jury will not require or authorize a reversal of the judgment of the trial court, where such instruction could not have prejudiced any of the substantial rights of the complaining party.

2. JURY — *Questions — No Evidence.* A jury will not be required to answer special questions submitted to them, where no evidence is introduced upon which answers could be given.

3. FIRE *Caused by Locomotive — Burden of Proof.* In an action against a railroad company for loss or damage suffered by the plaintiff by fire caused by the defendant in the operation of its railroad, proof that the fire was so caused is, under the provisions of chapter 155 of the Laws of 1885, *prima facie* evidence that it was so caused through the negligence of the railroad company; and it then devolves upon the railroad company to show, not only that its appliances to prevent the escape of fire were sufficient and in good order, and that its engineer was a competent and skillful engineer, but also that there was no mismanagement or negligence on the part of any of its servants or agents causing the fire.

4. ATTORNEY'S FEE — *Demand.* In such a case, where the plaintiff desires, under said chapter 155, to recover a reasonable attorney's fee, it is necessary that he should demand the same in his petition, and then submit the question to the court or jury trying the case upon its merits.

*Error from Greenwood District Court.*

THIS was an action brought in the district court of Greenwood county by *C. Karracker* against the *Fort Scott, Wichita & Western Railroad Company,* to recover damages for the destruction by fire of a certain amount of prairie hay, flax straw, fence wire and fence posts belonging to the plaintiff, of the alleged value, in the aggregate, of $404. The fire was alleged to have been caused by the railroad company on November 15, 1887, by reason of its negligent operation of its railroad. The plaintiff prayed judgment for the aforesaid sum of $404, and for costs of suit. The defendant answered, setting forth, first, a general denial; second, that the plaintiff's damages were caused by his own carelessness and negligence, without

any fault or negligence on the part of the railroad company. The plaintiff replied by filing a general denial.  The case was tried by the court and a jury, and the jury rendered the following general verdict and made the following special findings, to wit:

"VERDICT.

"We, the jury in the above-entitled cause, do upon our oaths find for the plaintiff, and assess the amount of his recovery at $305.50."

"SPECIAL FINDINGS.

"1. How did the fire originate, that caused the damage to plaintiff's property?  A. Coals or sparks from defendant's engine.

"2. If you answer that the fire was caused by defendant's engine or train, state, in answer to this question, whether it was caused by the negligent operation of said train or engine. A. Yes.

"3. If you answer that last question in the affirmative, state fully in what the negligence consisted.  A. We do not know.

"4. Was the engine of defendant, alleged to have set out the fire, furnished with the best appliances to prevent the escape of fire?  A. Yes.

"5. Were the appliances to prevent the escape of fire from said engine in good order at the time of the fire?  A. Yes.

"6. If you answer the last question in the negative, state fully wherein said appliances were defective?

"7. Was the engineer in charge of the engine which it is claimed set out the fire a competent and skillful engineer? A. ,We don't know.

"8. Was said engineer operating the engine, at the time said fire was claimed to have been set out, in a competent manner?  A. No.

"9. If not, state wherein he was careless, incompetent, or unskillful.  A. We don't know.

"10. Did the defendant allow dry grass, weeds, or other combustible material to accumulate on its right-of-way at the place where it is claimed the fire originated?  A. Only a natural growth.

"11. What effort did the defendant or its employés make to burn off its right-of-way at the place where the fire originated?  A. An effort was made, but failed.

"12. How far were plaintiff's stacks of hay and straw from defendant's railroad?    A.  A little over a mile.

"13. Is it not true that dry grass intervened all the way from defendant's right-of-way to plaintiff's straw and hay? A.  Yes; with the exception of a plowed strip 14 feet wide and one-quarter of a mile long.

"14. What, if anything, had plaintiff done to protect his hay and straw from fire?    A.  He plowed a strip on the south side of his land 14 feet wide and one-fourth mile long.

"15. How many good stacks of hay belonging to plaintiff were destroyed by fire?    A.  Four.

"16. How many stacks of inferior hay belonging to plaintiff were destroyed by fire?    A.  Three.

"17. What do you allow per ton for the good hay?    A. $3.50 per ton.

"18. What do you allow per ton for the inferior hay?    A. $3 per ton.

"19. How many tons of marketable hay were destroyed? A.  Seventy-seven tons.

"20. What do you allow for the flax straw that was destroyed?    A.  $35.

"21. How much do you allow for the posts destroyed; and how much for the wire?    A.  $2 for the posts; $5 for the wire."

This verdict and these findings were returned to the court on May 18, 1888.    The defendant at the time moved the court to require the jury to answer the 3d, 7th and 9th questions, and to more fully and definitely answer the 10th question, which motion was overruled.    On May 19, 1888, the defendant moved for a judgment in its favor upon the special findings of the jury, notwithstanding the general verdict, which motion was overruled.    On May 21, 1888, the defendant filed a motion for a new trial.    Afterward, and on June 2, 1888, the plaintiff applied to the court orally for a reasonable attorney's fee.    The defendant objected, for the reason that no claim for an attorney's fee was set forth in the plaintiff's petition; it also claimed that it was not ready to try the new issue presented, and asked for further time to prepare for its defense, and also demanded a jury to try this new issue; but the court overruled all these objections, requests

33  —46 KAS.

and demands of the defendant, except that the court gave to it five minutes within which to prepare for its defense. The court then tried this new question, but the plaintiff only introduced evidence; and the court then found upon this new issue in favor of the plaintiff and against the defendant, and found that a reasonable attorney's fee was $50; and the defendant again moved for a new trial, including the matter of attorney's fees, and the court then overruled both motions for new trials, and rendered judgment in favor of the plaintiff and against the defendant for $305.50 damages, and for the sum of $50 as attorney's fees, and for the costs of suit; and the defendant, as plaintiff in error, brings the case to this court for review.

*J. H. Richards*, and *C. E. Benton*, for plaintiff in error; *D. B. Fuller*, of counsel.

*T. L. Davis*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: It is claimed that the court below erred in giving an instruction to the jury relating to the railroad company's permitting dry grass, weeds and other combustible material to accumulate upon its right-of-way. This instruction was perhaps inapplicable under the facts of this case and therefore improper, but we do not think it could have prejudiced any of the substantial rights of the defendant railroad company in any particular.

1. Instruction, when harmless.

The jury found with reference to this matter as follows:

"10. Did the defendant allow dry grass, weeds or other combustible material to accumulate on its right-of-way at the place where it is claimed the fire originated? A. Only a natural growth.

"11. What effort did the defendant or its employés make to burn off its right-of-way at the place where the fire originated? A. An effort was made, but failed."

And with reference to negligence, the jury found as follows:

"1. How did the fire originate, that caused the damage to

plaintiff's property?    A. Coals or sparks from defendant's engine.

"2. If you answer that the fire was caused by defendant's engine or train, state, in answer to this question, whether it was caused by the negligent operation of said train or engine. A. Yes."

"8. Was said engineer operating the engine, at the time said fire was claimed to have been set out, in a competent manner.    A. No."

Evidently the jury found against the defendant because of negligence in so operating its railroad as to permit fire to escape from its engine, and not negligence in permitting dry grass, weeds or other combustible material to accumulate upon its right-of-way; and therefore the giving of the foregoing instruction will not require nor authorize a reversal of the judgment of the court below.

With reference to the failure of the court below to require the jury to answer the 3d, 7th and 9th special questions submitted to them, and to answer the 10th more definitely, and the affirmative action on the part of the court in rendering judgment against the defendant notwithstanding the jury's answers to the 4th and 5th special questions submitted to them, together with the other findings, want of findings, the evidence and want of evidence, it will be perceived from what we shall hereafter say, that, under the evidence and the law, as it now exists, the jury could not have given answers to the foregoing questions any more favorable to the defendant than those they did give; and the court below could not have rendered any judgment with respect to damages different from the one which it did render.    There was not a particle of evidence introduced on the trial tending to show how the fire escaped from the defendant's engine, or what the engineer was doing at the time when it escaped.    But taking the record as it is, did the court below err in any of the foregoing particulars?    Upon the authority of the case of *A. T. & S. F. Rld. Co. v. Riggs*, 31 Kas. 622, and the cases of the *U. P. Rly. Co. v. Fray*, 35 id. 700, and *Am. Cent. Ins. Co. v. Hathaway*, 43 id. 399, the

2. Jury—questions—no evidence.

judgment of the court below would probably have to be reversed, unless the provisions of chapter 155 of the Laws of 1885, which took effect May 1, 1885, will authorize an affirmance. The first and second sections of said chapter read as follows:

"SECTION 1. That in all actions against any railway company organized or doing business in this state, for damages by fire, caused by the operating of said railroad, it shall be only necessary for the plaintiff in said action to establish the fact that said fire complained of was caused by the operating of said railroad, and the amount of his damages (which proof shall be *prima facie* evidence of negligence on the part of said railroad): *Provided,* That in estimating the damages under this act, the contributory negligence of the plaintiff shall be taken into consideration.

"SEC. 2. In all actions commenced under this act, if the plaintiff shall recover, there shall be allowed him by the court a reasonable attorney's fee, which shall become a part of the judgment."

This statute containing the above-quoted sections has been held to be constitutional and valid by this court in the case of *Mo. Pac. Rly. Co. v. Merrill,* 40 Kas. 404. Under this statute, when the plaintiff in a case like the present has shown that the fire which destroyed or injured his property was caused by the operation of the railroad, as the plaintiff sufficiently showed in the present case, he has then made out a *prima facie* case of negligence as against the railroad company, and

3. Fire caused by locomotive —burden of proof.

he may then recover, unless the railroad company shall show by sufficient evidence that no negligence on its part supervened to cause the fire. In other words, the railroad company must then show that the fire did not escape from its engine because of any imperfection in its appliances to prevent the escape of fire, nor from any mismanagement of the engine on the part of its servants or agents. In the present case it must be presumed, under the evidence and the findings of the jury, that all the appliances to prevent the escape of fire were sufficient and in good order. But the question is still left: Was there any mismanagement

on the part of the railroad company's agents or servants with respect to the engine which caused or permitted the fire to escape? Presumptively, under the statute and the facts proved by the plaintiff, there was such negligence, and the jury in effect found that there was such negligence; and, in order to rebut this presumption, the defendant introduced a witness by the name of E. Johnson, who testified that he was the engineer in charge of the engine supposed to have caused the fire; that he had been an engineer on that railroad for five years, and an engineer in all for six years, and that he had been a fireman prior to that time; and that the engine supposed to have caused the fire was at the time in good order, and that it had been repaired only two months prior to that time; and then the following questions were asked him and answered, to wit:

"Ques. State if you know of its [the engine's] ever setting out any fire after it was repaired. Ans. I do not.

"Q. You may state whether, in running this train, you were managing the train properly and carefully as an engineer should. A. In the usual manner, as carefully as could be done."

The defendant then introduced another witness, by the name of J. B. Key, who testified that he was on the train that day as an extra fireman, with Mr. Jackson as engineer; that the appliances on that engine to prevent the escape of fire were the best; that he had had experience as a fireman with a great many different engineers; and then the following questions were asked him and answered, to wit:

"Ques. I will ask you from your experience to state whether Mr. Jackson, the engineer in charge of this engine on the day named, is a careful and skillful engineer. Ans. Yes, sir; he is.

"Q. Do you know of this train setting out any fire after the time, as he spoke of, of being repaired? A. No, sir; I do not."

There was not a particle of evidence introduced tending to show *how* the fire escaped from the engine, or that anyone knew how it escaped, or the precise time when it escaped. All this is left for inference from the facts proved and under the statute. The question now arises: Does the foregoing testi-

mony of E. Johnson and J. B. Key, along with the facts that were actually proved, so conclusively show that the fire that escaped from the engine and caused the injury to the plaintiff's property was not caused by the negligence or mismanagement of E. Johnson, or of Mr. Jackson, or whoever was the engineer, or by the negligence or mismanagement of anyone else for whom the railroad company is responsible, that the verdict and judgment rendered in the court below must necessarily be set aside and reversed? It does not appear that either Johnson or Key knew anything concerning the fire that caused the injury to the plaintiff's property. They did not know how it escaped, or, indeed, that it escaped at all. And either Johnson or Key was not on the train from which the fire escaped, or else Key did not know Johnson's name, or had forgotten it; for in his testimony he spoke of his engineer's name as being Jackson. And Johnson could not well testify that he was managing the train or the engine "in the usual manner, as carefully as could be done," at the time when the fire escaped, for he did not know when the fire escaped. He did not attempt to state what he was doing when the fire escaped. Possibly he was doing something that caused it to escape. But what was the fireman doing at that time? There was no evidence that he was acting carefully. Possibly all the trouble was caused by his acts. And it devolved upon the railroad company to show that the fire did not escape through the negligence of anyone of its agents or servants. This was not sufficiently shown in the present case, and therefore we cannot say that either the court below or the jury erred in holding the railroad company liable. We shall assume that all the appliances to prevent the escape of fire were in the present case perfect and in good order, and that the engineer in charge of the engine was a competent and skillful engineer, though this last matter was hardly proved; but that through the engineer's negligence, or the negligence of the fireman, the fire causing the injury was permitted to escape. There was nothing, however, in the case that tended to show just wherein the engineer or fireman was careless, unskillful or

negligent, or wherein consisted the negligence; and nothing to show what their acts were, or what they were doing when the fire escaped.   While this want or absence of any such showing would have been against the plaintiff prior to the taking effect of chapter 155 of the Laws of 1885, yet, after that time and under the provisions of that chapter, and as the law now is, such want or absence of showing would be and is against the railroad company.   And as the railroad company did not sufficiently rebut the *prima facie* case of negligence made out against it by the evidence and under the statute, it must be held to be liable.

It is next claimed that the court below erred in rendering a judgment for an attorney's fee against the railroad company, and we are inclined to think that this claim is well founded. In the case of *Mo. Pac. Rly. Co. v. Merrill*, 40 Kas 404, 409, the following language is used: ·

"The question, what was a reasonable attorney's fee, was properly submitted to the jury.   It is true, the statute provides that the court shall allow a reasonable attorney's fee, which shall become a part of the judgment.   The word 'court,' however, was doubtless used by the legislature in the broader sense, as including both judge and jury, or judge alone, according as the court may be constituted when the trial occurs. What is a reasonable attorney's fee, is a question of fact which should be submitted and determined the same as any other fact arising in the case."

This indicates that the question of the allowance of a reasonable attorney's fee should be presented for hearing at the same time that the case is tried upon its merits, and to the same tribunal, and if so, it would also seem that the demand for a reasonable attorney's fee should be set forth, in some manner, in the plaintiff's petition.   The cases of *Mo. Pac. Rly. Co. v. Abney*, 30 Kas. 41, and *K. C. Ft. S. & G. Rld. Co. v. Burge*, 40 id. 736, show what would be sufficient allegations, statements or demands in the petition of the plaintiff to authorize the recovery of an attorney's fee under the railroad stock-killing law of 1874.   These cases apply with some force to the present case.   In all cases where the plaintiff de-

4. Attorney's fee —demand. sires to recover an attorney's fee, we think a demand therefor should be made in his petition, and then the question of an allowance of an amount for such attorney's fee should be submitted at the same time that the case is submitted for trial upon its merits, and to the same trier or triers. The manner in which the plaintiff in this case presented his claim for an attorney's fee, and the manner in which his claim was heard and allowed, and the judgment therefor rendered, have all been stated in the statement of facts preceding this opinion, and it is not necessary now to restate them. We think that error was committed in the allowance of the attorney's fee, and to the extent of this attorney's fee the judgment of the court below must be reversed. In all other respects the judgment will be affirmed.

All the Justices concurring.